713 P.2d 1266

**Earl D. NYSTROM and Peggy D. Nystrom, husband and wife, Plaintiffs-Appellants,**

**v.**

**MASSACHUSETTS CASUALTY INSURANCE COMPANY, Defendant-Appellee.**

**No. 1 CA–CIV 7504.**

Court of Appeals of Arizona, Division 1, Department C.

Jan. 28, 1986.

Randall R. Douglas, P.C. by Randall R. Douglas, Mark Stachon, Phoenix, for plaintiffs-appellants.

Kunz & Waugh by Donald R. Kunz, Phoenix, and Mumford, Schrage, Merriman & Zurek, P.C. by Thomas M. Zurek, James B. Main, Des Moines, Iowa, for defendant-appellee.

## OPINION

KLEINSCHMIDT, Judge.

Earl and Peggy Nystrom appeal the trial court's judgment in favor of Massachusetts Casualty Insurance Co. in their action for breach of contract and insurer bad faith based on six occupational disability insurance policies. Because we find the trial court's findings of fact and conclusions of law insufficient, we remand for further findings.

## FACTS

For several years before January 1979, Earl Nystrom was employed by the Farnam Company of Phoenix, Arizona. Farnam is a distributor of horse care products. Nystrom's duties with the company ranged from sales to marketing and sales management. From 1973 to 1978, Nystrom purchased six separate occupational disability policies all from Massachusetts Casualty. The potential combined monthly benefits from the policies was $2,750. Nystrom was insured against "total disability," which the policies defined as:

> complete inability of the Insured to engage in his regular occupation or profession; however, after ... 120 consecutive months of any period for which monthly benefits are payable, ... the term 'total disability' shall mean complete inability of the Insured to engage in any gainful occupation for which he is reasonably fitted, having due regard for his earning ability from the Policy Date, his education, his training and his experience.

In November 1978, Nystrom suffered an anxiety attack. The doctor who examined him determined he had not had a heart attack or sustained any heart damage, but was suffering from stress. Nystrom was later subjected to a complete range of heart tests at the Arizona Heart Institute which showed that he had no disabling heart problems.

In December 1978, Nystrom, complaining of tension in the chest, consulted Merlin Kamfer, M.D. Dr. Kamfer determined Nystrom's chest tightness was not a heart problem, but was of muscoskeletal origin secondary to tension at work. Dr. Kamfer discussed with Nystrom the need to change his approach to work.

Nystrom resigned from the Farnam Company in January 1979. In his resignation letter, he did not cite any health problems, but said he was resigning due to conflicts between himself and Farnam's new president. Shortly after resigning, Nystrom applied for state unemployment benefits. His application stated he was seeking employment in the areas of marketing management, sales management, or upper management. He also applied for health insurance from Continental General Insurance Company of Omaha. In his application he acknowledged he had previously seen a doctor for job-related stress, but that he was having "no problem now" and had made a "complete recovery." Nystrom was examined by a physician in Feb-

ruary 1979, and was confirmed as doing well.

In March 1979, Nystrom made a claim for benefits on his disability insurance policies. He indicated in his application for benefits that his illness was "stress (heart) due to position of employment." Appellee sent a physician's statement form to Nystrom's doctor. The form specifically asked: "When did total disability commence?" The doctor answered by drawing a line through the answer space. He indicated elsewhere on the questionnaire that Nystrom was suffering from "muscoskeletal pain—chest," but later testified that he may have not personally completed the form.

Massachusetts Casualty denied Nystrom's application for benefits. The denial letter was based on Nystrom's doctor's failure to identify any disability. Nystrom immediately protested the denial of benefits. He requested his doctor to write to appellee and state that due to health reasons, Nystrom could no longer engage in upper management in the industry Nystrom had worked in for twenty years. The doctor sent the insurer a letter stating that in his opinion, Nystrom should stay out of top or middle management jobs.

After receiving the doctor's letter, Massachusetts Casualty began a more thorough investigation. Based on the investigation it concluded that Nystrom had no disability and had resigned for business reasons rather than because of poor health. It again denied Nystrom's claim for disability benefits.

From April 1979 to the time of trial, Nystrom and his wife continuously engaged in the real estate business. Evidence at trial showed that the Nystroms worked many hours a week developing and promoting their successful corporation. In August 1980, Nystrom had another acute stress reaction. He was treated by a new physician, Dr. Romney, who determined that Nystrom had no heart condition. Dr. Romney testified that in his opinion, Nystrom was unable to work during acute anxiety reactions. Dr. Romney also testified that as late as 1981 and 1982, Nystrom seemed to have overcome his disabling symptoms and was handling stress more appropriately. He repeatedly emphasized the importance of Nystrom being able to get away from stress in his real estate job by turning work over to Mrs. Nystrom. Dr. Romney specifically stated that Nystrom should not return to a stressful management job.

In September 1982, Nystrom applied for life insurance from Pacific Mutual Life Insurance Company. On his application, the only mention he made of the fact that he had been treated for stress was that he had been given a physical prompted by chest pains in 1978. He nowhere indicated on the application that he was suffering any disability.

Nystrom sued for collection of benefits and insurer bad faith. After a bench trial in January 1983, the court made findings of fact and conclusions of law pursuant to Rule 52(a), Arizona Rules of Civil Procedure. The court found that Nystrom was entitled neither to benefits under the policy nor damages for insurer bad faith. On appeal Nystrom raises five issues:

1. Whether the trial court improperly admitted Nystrom's subsequent insurance applications and reports to the Arizona Department of Economic Security.

2. Whether the trial court erred in permitting the defense of absense of "care and attendance of a physician."

3. Whether the trial court erred in finding Massachusetts Casualty had not committed bad faith in its initial examination of Nystrom's claim.

4. Whether the trial court applied the correct standard of disability.

5. Whether the court improperly failed to consider Nystrom's reasonable expectations.

## OBJECTIONS TO EVIDENCE

The Nystroms contend the trial court erred in considering representations Mr. Nystrom made in other insurance applications concerning his health. They cite as

authority *Weber v. Blue Cross of Montana,* 196 Mont. 454, 643 P.2d 198 (1982), and the case *Weber* relies on, *Continental Ins. Co. v. Clayton Hardtop Skiff,* 367 F.2d 230 (3rd Cir.1966). In both these cases, representations on a subsequent insurance application were held inadmissible to refute a claim based on a policy from another company. The facts in *Weber* are similar to this case, but the court gave no reason for its reliance on *Continental.* *Continental* was a case so mired in issues of admiralty law, the facts of which were so dissimilar to either *Weber* or this case, that we see no reason to apply its holding in this case. We therefore reject *Weber* and hold that Nystrom's representations as to his health on other insurance applications were relevant to the issues at trial and were therefore admissible as relevant evidence under Rule 402, Arizona Rules of Evidence. As admissions of a party opponent, they were also admissible under Rule 801(d)(2), Arizona Rules of Evidence, as substantive evidence on the issue of whether Nystrom suffered a disability and as impeachment.

■ The Nystroms also argue that the trial court erred in considering statements which Mr. Nystrom made to the Arizona Department of Economic Security in connection with his application for unemployment insurance benefits. They assert that the release Mr. Nystrom provided appellee did not cover such information, and in any event, A.R.S. § 41–1959 and Department of Economic Security Regulation R6–3–1403(a)(1)(f), rendered release of the information illegal and therefore excludable at trial.

The release on Nystrom's proof of loss form provided:

I hereby authorize any physician, hospital, clinic or other medically related facility, insurance company or other organization, institution, or person, that has any records or knowledge of me or my health, to furnish Massachusetts Casualty Insurance Company of Boston, Massachusetts, or its representative any and all such information including copies of all hospital or medical records. A photostatic copy of this authorization shall be considered as effective and valid as the original.

The Department of Economic Security was an organization or institution which had records concerning Mr. Nystrom; thus, his applications for unemployment benefits were within the scope of the release.

■ Contrary to Nystrom's secondary argument on this point we believe the exclusionary rule is inapplicable in civil cases, and it is therefore unnecessary to discuss whether the Department of Economic Security violated A.R.S. § 41–1959 or its Regulation R6–3–1403, both dealing with the protection of confidential information in releasing the information to appellee. The sole authority for excluding such evidence is *Williams v. Williams,* 8 Ohio Misc. 156, 221 N.E.2d 622 (1966), which holds that under the federal constitution, illegally obtained evidence is inadmissible even in civil cases. The Supreme Court of the United States, however, has never applied the exclusionary rule in a civil case, *United States v. Janis,* 428 U.S. 433, 447, 96 S.Ct. 3021, 3029, 49 L.Ed.2d 1046, 1057 (1976), and neither has any court in Arizona. We thus reject *Williams* and hold that absent evidence of egregious and repetitious abuse of state power, the exclusionary rule is inapplicable to civil cases. *See INS v. Lopez-Mendoza,* 468 U.S. 1032, 104 S.Ct. 3479, 3490–91, 82 L.Ed.2d 778, 793 (1984). Given the circumstances of this case, the department's release of information to appellee was not egregiously improper.

## CARE AND ATTENDANCE DEFENSE

The Nystroms contend the trial court erred in permitting appellee to amend its answer to assert as a defense the allegation that Mr. Nystrom was not under the care and attendance of a physician. Regardless of the merit of appellants' argument, there is nothing in the record to show that the judge considered the defense in his decision. In fact, the court did not rule as to whether appellee could amend the answer to include the defense. Fur-

ther, appellants fail to demonstrate how the trial court's actions with respect to appellee's motion to amend the answer resulted in any prejudice to them. Thus, this argument presents no grounds for reversal.

## BAD FAITH CLAIM

■ Appellants attack as clearly erroneous the court's finding that the denial of benefits was completely and reasonably based upon the facts presented at all phases of the claims process. *See* Rule 52(a), Arizona Rules of Civil Procedure. They contend that at the time of the initial denial letter, appellee failed to conduct an investigation into the facts that might have supported Nystrom's claim of occupational disability. We disagree. The insurer's first denial of Nystrom's claim was based on its "insured's proof of loss" form and Dr. Kampfer's physician's statement. Massachusetts Casualty could have reasonably read the statement as an unequivocal assertion that Nystrom had no total disability. The cases cited in appellants' brief, *Brown v. Continental Cas. Co.*, 209 Kan. 632, 498 P.2d 26 (1972) and *Matthews v. Travelers Ins. Co.*, 212 Kan. 292, 510 P.2d 1315 (1973), are distinguishable. In both of those cases, the insurer had received medical reports that strongly suggested a disability. No such report was given the insurer in this case. We thus find that the trial court was correct in rejecting Nystrom's bad faith claim.

## PROPER LEGAL STANDARD FOR OCCUPATIONAL DISABILITY

■ Appellants complain that the trial judge failed to apply the proper standard of law to the facts of Nystrom's claim of occupational disability. The record is completely silent, however, as to any indication of what the trial judge considered the proper standard to be. While the judge did make extensive findings of fact and conclusions of law, he did not make findings sufficiently on point or complete to dispose of the case. The proper standard for disability under these insurance policies is

whether the condition, in this case stress, prevents the insured from performing the substantial and material duties of his occupation in the usual or customary way. We therefore remand to the trial judge to make further findings of fact and direct him to apply those findings to the legal standards discussed below.

Before discussing the proper legal standard in more detail, we need to address Massachusetts Casualty's main contention in this appeal, that regardless of what standard applies, the appellants are not entitled to recover, because, as stated in appellee's brief, "the trial court was well aware of Earl Nystrom's propensity to misrepresent, distort and lie when it was to his pecuniary interest to do so." Massachusetts Casualty claims that based on Earl Nystrom's lack of credibility, the trial judge implicitly found against the Nystroms on every fact underlying their claim. Yet the only specific finding the court made as to Nystrom's credibility was that "the facts as presented by the whole record point to the inescapable conclusion that the Plaintiffs' case simply does not inspire credibility." In oral argument, Massachusetts Casualty characterized the imprecise finding as "sugarcoating." That may well be correct, but we are nevertheless uncertain as to what the trial judge meant. Massachusetts Casualty repeatedly refers to Nystrom's representations on other insurance applications and for unemployment insurance as proof the trial judge found Nystrom incredible. Yet in discussions concerning objections to the findings of fact and conclusions of law, the judge said he did not consider the insurance applications in his decision. In fact, he said he did not "recall putting a lot of credence in any piece of evidence at all." If the judge took no heed of the evidence most destructive of Nystrom's credibility, we are unsure what the statement that "Plaintiffs' case simply does not inspire credibility" means. It could mean, as appellees suggest, that Nystrom himself was not credible. It could also mean that the judge believed that the Nystroms' case, even if the facts underlying it were true,

did not as a matter of law entitle them to relief.

Given our unwillingness to assume from a silent record that the trial judge found Nystrom not credible and resolved all the facts against him, we remand so that the trial judge may make direct findings as to the following: (1) Did Nystrom resign from Farnam primarily because of stress? If so, (2) was the stress caused by circumstances peculiar to his situation at Farnam, or was it a substantial and material aspect of his occupation as an executive level sales and marketing manager for a firm that manufactures and distributes horse care products?

The need for a finding as to whether Nystrom resigned from Farnam because of stress is obvious; if Nystrom resigned for reasons other than stress, he has no basis for recovery. That the trial judge never came to grips with this issue is evidenced by the following soliloquy:

> THE COURT: I tend to believe that maybe he left the company for the reasons he stated in the letter, plus stress and physical problems and—you know—it's a mixed situation oftentimes, and I think he found himself in a situation where he wasn't happy and wasn't getting along with the people and the philosophy, and also he didn't feel good and he had worries and he didn't want to drop over at his desk. So I think to come up with a paragraph that I would think would be acceptably fair to both sides, I think I'd have to review much of the testimony again and try to express the thought I just expressed in language that we would all find acceptable. I don't know that—I guess I feel like he may have resigned anyway with the change of philosophy of the company.
>
> I also feel like he may have resigned anyway had he just been ill—you know—alone, and still gotten along well at the company. So I don't have a whole lot of trouble with that.

The judge's discussion above undercuts appellee's contention that the judge unequivocally found that Nystrom resigned for reasons other than stress. It also raises a question as to whether the judge found Nystrom to be as unbelievable as appellee asserts. We thus direct the trial judge to make a finding as to whether Nystrom resigned from the Farnam Company because the stress associated with his job rendered him unable to work there. Should the judge find Nystrom resigned from Farnam primarily for reasons other than stress, he need make no other findings, and the judgment below will stand. Should the judge find that Nystrom resigned primarily because of stress, further findings are necessary.

If the judge finds Nystrom resigned from stress, he also needs to determine the source of the stress. It is at this point that the proper legal standard for recovery under an occupational disability policy becomes important. We find *Massachusetts Cas. Ins. Co. v. Rief,* 227 Md. 324, 176 A.2d 777 (1962), persuasive. In *Rief,* the insured, an executive in a scrap rag company, left his job after the stress of it precipitated two heart attacks. His doctor warned him to avoid work with tension producing duties. After he left the company, he purchased investment property, negotiated leases, and acquired two laundromats, collecting receipts from them. The Maryland Court of Appeals held that to collect under an occupational disability policy the "disability need only be such as to render [the insured] unable to perform the substantial and material acts of his own occupation in the usual or customary way." *Rief,* 227 Md. at 328, 176 A.2d at 779. The insured in *Rief* was allowed to recover because he was able to prove that he resigned his job because stress prevented him from working there, that this stress was a substantial and material element of his job as an executive in a scrap textile firm, and not due to friction between himself and others in the firm as the insurance company claimed, and finally because he showed that his subsequent job did not involve the same worry, tension, and strain that his scrap textile executive position did. Under *Rief,* Nystrom would be allowed to recover if he could show that the stress which

caused him to resign, assuming that he resigned from stress, resulted from the substantial and material part of his duties as an executive sales and marketing manager for a firm which manufactures and distributes horse care products and not the result of circumstances peculiar to his situation at Farnam. Whether or not Nystrom met the burden of proving an occupational disability as discussed in *Rief* cannot adequately be gleaned from the findings of fact or the comments of the trial judge. Accordingly, we remand to the trial judge to find, assuming he has first found that Nystrom resigned because of stress, whether the stress Nystrom suffered was a result of the inherent nature of the duties of Nystrom's occupation as an upper-level sales and marketing manager or whether it was due to factors peculiar to his job at Farnam, for example, friction between Nystrom and others at Farnam. We note that such findings are necessary only if the judge has first found that Nystrom resigned for reasons primarily due to stress. If the judge further finds that stress was a substantial and material part of Nystrom's occupation as an executive level sales and marketing manager, then Nystrom would be allowed to recover on his breach of contract claim. Otherwise, he may not recover except as discussed below.

## REASONABLE EXPECTATIONS

If the trial judge finds that Nystrom resigned because of stress, but that the stress was the product of factors peculiar to working at the Farnam Company, he could recover under the policy only if he reasonably expected that the policy would pay off if he were disabled from working at the Farnam Company in particular, as opposed to working in executive level sales and marketing in general. Nystrom testified that the agent from whom he purchased the policies expressly told him that if he could not work as the marketing manager of the Farnam Company that he could collect under the policies.

■ Appellants contend that our supreme court's decision in *Darner Motor Sales. Inc. v. Universal Underwriters Ins. Co.*, 140 Ariz. 383, 682 P.2d 388 (1984), would require the trial court to accept Nystrom's uncontradicted testimony that he reasonably expected his disability policies to pay off if he could no longer work at Farnam for reasons of health. We disagree. While a trial court in civil cases may not arbitrarily reject testimony from a disinterested and unimpeached witness, *State v. Roberts*, 138 Ariz. 230, 232, 673 P.2d 974, 976 (App.1983), the trier of fact is not bound by uncontradicted testimony from an interested witness. In any event, the trial judge had no reason seriously to consider Nystrom's expectations, nor did Massachusetts Casualty have any motive to produce evidence to refute Nystrom's contentions, since the *Darner* rule was not announced until several months after trial. Massachusetts Casualty does not argue that Nystrom could not, as a matter of law, reasonably have expected coverage. Instead, it simply contends that Nystrom is not credible on this point. Should it become necessary, the trial judge must make a finding as to Nystrom's reasonable expectations, that is, whether Nystrom reasonably expected that all or any of his occupational disability policies would pay off if he were disabled from working at his particular job at Farnam Company. If the trial judge finds that Nystrom's reasonable expectations were as he claims, he is entitled to recover under *Darner* for his breach of contract claim.

## CONCLUSION

The trial court did not err in its disposition of the bad faith claim and Massachusetts Casualty's "care and attendance of a physician" defense, nor did it err by allowing into evidence subsequent insurance applications and applications for unemployment insurance benefits. We remand to the trial court to make specific findings as to the following:

1. Was Nystrom's resignation from Farnam primarily due to stress? If no, the judgment should be for Massachusetts Casualty. If yes, then,

2. Was the stress primarily caused by an inability to handle the tension, worry, and strain of his occupation as an executive level marketing and sales manager? If yes, Nystrom would be entitled to recover under the policies.

3. If the answer to question 2 is no, did Nystrom reasonably expect that his policies would pay off if his disability spawned from circumstances peculiar to his job at Farnam? If so, Nystrom is entitled to recover even if the stress was caused by factors extrinsic to the nature of the occupation, such as friction with his co-workers at Farnam.

When this case is returned to the superior court it will, we hope, be assigned to the same judge who has handled it thus far. In the event the matter is not assigned to the judge who heard it previously a new trial will be necessary. If it is assigned to the same judge he may use whatever means permissible to make his findings. If he wishes to rely solely on the record and his recollection of witness credibility, especially the credibility of Earl Nystrom, he may do so. He may hold hearings to receive evidence and arguments for some or all findings. If he chooses, he may even order a new trial. Nothing in this opinion should influence either how the trial judge makes his findings or what findings he should make.

The judgment of the trial court in favor of the appellee on the issue of bad faith is affirmed. The matter is remanded for further proceedings.

CORCORAN and EUBANK, JJ., concur.