OPINION

BRAMMER, Judge.
¶ 1 Appellants Chad and Marsha White appeal from the trial court’s denial of their motion for a new trial on the issue of damages, made pursuant to Rule 59, Ariz. R. Civ. P., 16 A.R.S., Pt. 2, in their wrongful death action against appellee Greater Arizona Bicyclists Association (“GABA”). The trial court ruled the jury could properly decide Chad and Marsha had suffered no compensable loss despite finding GABA liable for the death of their father, John White, notwithstanding GABA’s failure to contest Chad’s and Marsha’s evidence. We reverse.
Factual and Procedural Background
¶ 2 Although the facts are essentially uncontested, “[w]e view the facts and the reasonable inferences therefrom in the light most favorable to upholding the jury’s verdicts.” Crackel v. Allstate Ins. Co., 208 Ariz. 252, ¶ 3, 92 P.3d 882, 885 (App.2004). On October 14, 2001, John participated in a bicycling event organized by GABA. During that event, while he was attempting to cross a cattle guard in the road, John’s front bicycle wheel fell into a vertical gap in the guard. John was thrown forward from his bicycle and struck his head on the ground upon landing. He was airlifted to a hospital, but was pronounced dead approximately one hour and twenty minutes after the accident.
¶ 3 John’s wife, Elaine, and his adult children, Chad and Marsha, filed a wrongful death action alleging the Arizona Department of Transportation (“ADOT”) and GABA had been negligent. The plaintiffs stipulated to the dismissal with prejudice of their claim against ADOT and proceeded to trial on their claim against GABA. At trial, Chad testified he missed his father, had had “quite a few dreams about [his father]” since the accident, and in the time before his father’s death, “was learning a lot more” from his father than he ever had before. He also testified that, when he found out about the accident, he had to be placed on oxygen because he “wasn’t really breathing and sort of passed out.” Marsha testified her father “helped [her] out all the time” and “[w]hen [she] needed help with things ... [she] could talk to him.” She further stated that, since her father’s death, she “feels like there is a part of [her] missing.”
¶ 4 Marsha also testified that her mother had “physical problems,” including fibromyalgia, diabetes, and fatigue; that John had “always [been] there for [Elaine]”; and that Marsha now has “to help [Elaine] out with everything that [John] ha[d] helped her out with” previously, such as laundry, cleaning, and errands. Chad testified Elaine “gets upset very easily” since John’s death. GABA did not cross-examine Chad or Marsha and offered no witnesses or evidence rebutting their testimony.
¶ 5 The jury determined GABA was liable for John’s death and awarded $250,000 to Elaine but nothing to Chad or Marsha. It allocated fifty percent of the fault for John’s death to ADOT as a nonparty and twenty-five percent each to John and GABA. Chad and Marsha then filed a Rule 59 motion for a new trial on the amount of damages, arguing the jury’s failure to award them any damages was contrary to the “uncontroverted evidence that [Chad and Marsha] were in fact damaged.” The trial court denied the motion, stating it was “within the jury’s discretion to determine what amount of damages, if any, should have been awarded to Chad and Marsha.” This appeal followed.
Discussion
¶ 6 Chad and Marsha contend on appeal that the trial court erred in denying their motion for a new trial on the issue of damages. “We review the denial of a motion for new trial ... for an abuse of discretion.” Mullin v. Brown, 210 Ariz. 545, ¶ 2, 115 P.3d 139, 141 (App.2005). Chad and Marsha argue the jury was required to award them some damages because the evidence of their emotional loss was uncontested. “[I]f any *136 substantial evidence could lead reasonable persons to find the ultimate facts sufficient to support the [jury’s] verdict, we will affirm the judgment.” Gonzales v. City of Phoenix, 203 Ariz. 152, ¶ 2, 52 P.3d 184, 185 (2002).
¶ 7 Arizona’s wrongful death statutes, A.R.S. §§ 12-611 through 12-613, permit “the surviving husband or wife, child, [or] parent” of a decedent to bring an action to recover damages on account of that decedent’s death “caused by wrongful act, neglect or default,” §§ 12-611, 12-612. Section 12-613 addresses the measure of damages for wrongful death and states: “[T]he jury shall give such damages as it deems fair and just with reference to the injury resulting from the death to the surviving parties who may be entitled to recover, and also having regard to the mitigating or aggravating circumstances attending the wrongful act, neglect or default.” Such damages may include a child’s “loss of love, affection, comfort, guidance and companionship which [the child] would have received.” S. Pac. Transp. Co. v. Lueck, 111 Ariz. 560, 573, 535 P.2d 599, 612 (1975); Sedillo v. City of Flagstaff, 153 Ariz. 478, 480, 737 P.2d 1377, 1379 (App.1987) (damages for wrongful death “can include allowances for loss of companionship, comfort and guidance”).[1]
¶ 8 On appeal, Chad and Marsha rely solely on Sedillo, decided by Division One of this court. There, a jury had found the City of Flagstaff liable for the wrongful death of Tony Sedillo. 153 Ariz. at 480, 737 P.2d at 1379. It awarded damages to the decedent’s widow and two minor children, but awarded no damages to his mother and his adult children. Id. “The evidence concerning the decedent’s close family relationships was not impeached, contradicted or refuted by any substantive evidence offered by the City.” Id. at 481, 737 P.2d at 1380. The plaintiffs also presented unimpeaehed testimony concerning “the present value of decedent’s potential future income.” Id. On appeal, Division One determined the trial court had abused its discretion in denying a new trial on the issue of damages to those plaintiffs to whom the jury had not awarded damages, id. at 482-83, 737 P.2d at 1381-82, reasoning that “ample testimony demonstrated that each of the plaintiffs suffered emotional and possibly financial losses due to Tony’s death” and that “those [plaintiffs] who did not receive any damages were ... entitled to some damages in light of the evidence established at trial and by virtue of their status as statutory beneficiaries.”[2] Id. at 482, 737 P.2d at 1381.
¶9 Chad and Marsha argue Sedillo is “squarely on all fours with the present case” because “there was no impeachment, contradiction or refutation of the evidence of [their] close family relations with John.” In response, GABA argues Sedillo is distinguishable because the plaintiffs in that case, unlike Chad and Marsha, “proved specific pecuniary losses” from the decedent’s death, and evidence of financial loss is required, relying on Quinonez v. Andersen, 144 Ariz. 193, 696 P.2d 1342 (App.1984). We disagree. There was no evidence presented in Sedillo that the plaintiffs to whom the jury awarded no damages were financially dependent on the decedent, only that he would have provided financial support “ ‘if they needed it’ ” or if they had attended college. 153 Ariz. at 482, 737 P.2d at 1381. The court in Sedillo described the plaintiffs’ financial losses as merely “possibl[e],” but did not similarly qualify their emotional loss. Id. Therefore, we conclude the court in Sedillo did not rely on the evidence of the plaintiffs’ economic loss in deciding they were necessarily entitled to some damages.
¶ 10 Nor does Quinonez support GABA’s position. Although Division One of this court stated in Quinonez that damages *137 in a wrongful death action are apportioned “by the individual pecuniary loss suffered by each [beneficiary],” it did not rule that evidence of economic loss is required in order to recover under the wrongful death statute. 144 Ariz. at 196, 696 P.2d at 1345. It instead determined the required apportionment permitted an individual statutory beneficiary to receive a new trial on the issue of damages in which other beneficiaries would not participate. Id. Indeed, nothing in Quinonez suggests the plaintiff sought damages for emotional loss; he instead presented evidence of “economic loss by reason of his wife’s death.” Id. at 198, 696 P.2d at 1347. Moreover, it is established law in Arizona that a party may recover for noneconomic losses in a wrongful death action. See Lueck, 111 Ariz. at 573, 535 P.2d at 612. And nothing in Sedillo suggests we should distinguish between emotional or economic loss for the purpose of applying its holding.
¶ 11 GABA also argues the court’s holding in Sedillo depended on Division One’s conclusion that “the jury may have improperly considered comparative negligence principles when it determined the awards.” 153 Ariz. at 482, 737 P.2d at 1381. GABA asserts “there is no concern that the jury [in this case] based its award on improper considerations of comparative fault.” Assuming, arguendo, that the jury was properly instructed on issues of comparative fault, we do not agree the holding in Sedillo depended on the mere possibility the jury improperly considered comparative negligence in calculating damages. The Sedillo court’s concern the jury might have improperly considered comparative negligence principles was “[d]ue to the extremely low damage awards,” id.; therefore, the court clearly was referring to those plaintiffs who had been awarded some compensation, but not to those plaintiffs who received no damage award at all.[3]
¶ 12 GABA asserts the evidence of emotional loss in Sedillo was stronger than the evidence of Chad’s and Marsha’s emotional loss. We agree with Chad and Marsha, however, that Sedillo does not “create[ ] some type of threshold test with ... regard to the quantum of love and affection between ... family members which must be met” before Sedillo’s holding applies. Division One in Sedillo based its decision instead on the absence of any controverting evidence “and by virtue of [the plaintiffs’] status as statutory beneficiaries.” Id. at 482, 737 P.2d at 1381. The strength of Chad’s and Marsha’s testimony may be relevant to the amount of damages they should be awarded, but not whether they should recover damages at all. Sedillo requires they be awarded “some damages.” Id.
¶ 13 GABA additionally contends the word “shah” in § 12-613 is not mandatory, but permissive, and therefore does not require the jury to award damages, relying on State v. Sanchez, 119 Ariz. 64, 68, 579 P.2d 568, 572 (App.1978) (§ 12-613 “merely authorized] but d[oes] not mandate ... a jury to award ... damages”). Sanchez, however, addressed whether punitive damages could properly be awarded against the state in a wrongful death action, not whether it was within the jury’s province to award no damages. 119 Ariz. at 68, 579 P.2d at 572. Moreover, nothing in Sanchez suggests the evidence of damages was uncontested, unlike in Sedillo and the matter before us. Therefore, Sanchez is distinguishable and does not control here. Additionally, Sedillo does not necessarily require a jury to award damages to a statutory beneficiary in a wrongful death action upon finding liability, but does so only when that claimant’s evidence of loss is uncontested.
¶ 14 For the reasons stated above, we agree with Chad and Marsha that Sedillo is, in all relevant ways, indistinguishable from this case. Sedillo does not permit a jury, upon finding a defendant hable in a wrongful death action, to fail to award some damages to a claimant when that claimant’s evidence of loss, economic or otherwise, is uncontested. And GABA has not argued Sedillo is wrongly decided, either in its briefs or at oral argument in this court. “Absent a decision by the Arizona Supreme Court compelling a contrary result, a decision by one division of the Court of Appeals is persuasive with the *138 other division.” Scappaticci v. Sw. Sav. & Loan Ass’n, 135 Ariz. 456, 461, 662 P.2d 131, 136 (1983). Therefore, we consider Sedillo to be ‘“highly persuasive and binding, unless we are convinced that [it is] based upon clearly erroneous principles, or conditions have changed so as to render [it] inapplicable.’” 135 Ariz. at 461, 662 P.2d at 136, quoting Castillo v. Indus. Comm’n, 21 Ariz. App. 465, 471, 520 P.2d 1142, 1148 (1974). In view of the deference we give prior decisions of this court and GABA’s lack of argument that Sedillo is wrongly decided, we are hesitant to address whether Sedillo is good law. However, considering our dissenting colleague’s well-reasoned criticism of Sedillo and the close issue presented in this ease, we address the question.
¶ 15 The dissent argues Sedillo “is not well grounded in any authority and appears to be an anomaly in Arizona law,” focusing primarily on the Sedillo court’s failure to address the deference we give juries in making damage determinations. We agree it is a jury’s role to determine the amount of damages. See Larsen v. Decker, 196 Ariz. 239, ¶ 28, 995 P.2d 281, 287 (App. 2000) (“[A] damages award is within the jury’s province.”). This role is of particular importance where the jury must determine appropriate damages for emotional loss. See Hernandez v. State, 128 Ariz. 30, 32, 623 P.2d 819, 821 (App.1980) (“Translation into dollars of the loss of companionship, affection, and society, and the anguish the parents experienced as a result of their daughter’s death is peculiarly the jury’s function.”). Moreover, we recognize that we review a trial court’s decision on a motion for new trial for an abuse of discretion because, “like the jury, it has had the opportunity to hear the evidence and observe the demeanor of witnesses.” Mammo v. State, 138 Ariz. 528, 533-34, 675 P.2d 1347, 1352-53 (App.1983).
¶ 16 And we note that, contrary to Chad and Marsha’s contention at oral argument, unlike in a traditional negligence case, damage to the plaintiff is not an element of liability in a wrongful death action. Cf. Quinonez, 144 Ariz. at 196, 696 P.2d at 1345 (wrongful death action has one plaintiff and one judgment; damages are then apportioned to statutoiy beneficiaries); Vivian Arnold Realty Co. v. McCormick, 19 Ariz.App. 289, 294, 506 P.2d 1074, 1079 (1973) (because “damages are an element of a cause of action for negligence, nominal damages cannot be awarded where there is a failure to prove those damages”). Instead, once a jury determines the defendant is hable for a wrongful death, it then, pursuant to § 12-613, determines “fair and just” damages “to the surviving parties” as defined by § 12-612. Thus, damages may not be presumed from the finding of liability. Admittedly, the majority in Sedillo addressed none of these critical issues. We do not agree, however, that its holding is clearly erroneous.[4] See Scappaticci, 135 Ariz. at 461, 662 P.2d at 136.
¶ 17 The discretion given juries is not unfettered. Cf. State v. Watson, 7 Ariz. App. 81, 88, 436 P.2d 175, 182 (1967) (“While complete uniformity in verdicts [for wrongful death] can never be achieved, there must be some limits to the unevenness that will be tolerated.”). Nor may we uphold a jury verdict in the absence of evidence in the record that supports its conclusion. Villegas v. Bryson, 16 Ariz.App. 456, 459, 494 P.2d 61, 64 (1972) (if there is “no evidence to support the verdict the trial court should vacate the judgment and order a new trial”). We find no Arizona authority holding that a fact-finder may arbitrarily disregard a witness’s testimony — instead, a fact-finder’s decision to do so must have some record support. As Division One of this court stated in Carabetta v. Industrial Commission, 12 Ariz.App. 239, 242, 469 P.2d 473, 476 (1970):
We recognize that there are many Arizona decisions ... involving both workers’] compensation and civil actions which state as a general proposition that the trier of fact may disregard the uncorroborated testimony of an interested party. However, an examination of these decisions shows *139 that they do not stand for the proposition that the trier of fact may arbitrarily and without reason reject such testimony. In these eases the testimony of the interested party was either in the nature of opinion evidence or there was some other evidence before the court which cast suspicion or created doubt concerning the testimony of the interested party.
See also Ratley v. Indus. Comm’n, 74 Ariz. 347, 349-50, 248 P.2d 997, 998 (1952) (“[T]he trier of the facts is the judge of the witness’ credibility and is not required to accept the uncontradieted evidence of an interested party, but there are exceptions. The trier of the facts may not arbitrarily reject such uncontradicted evidence when nothing intrinsic in the evidence itself or extrinsic in the circumstances casts suspicion thereon.”); Boswell v. Phoenix Newspapers, Inc., 152 Ariz. 1, 4, 730 P.2d 178, 181 (App.1985) (holding that, in the absence of contradictory testimony, “a reasonable person would not be justified in rejecting [the witness’s] unimpeached testimony”); Hunter v. Indus. Comm’n, 130 Ariz. 59, 61, 633 P.2d 1052, 1054 (App.1981) (fact-finder “may not arbitrarily disregard the only reasonable inference which can be drawn from uncontradieted testimony”).
¶ 18 Chad’s and Marsha’s testimony was unequivocal, uncontradieted, utterly consistent both internally and with the other testimony in the record, and clearly described compensable emotional loss. As we noted in our recitation of the facts, Chad testified he thought his relationship with his father “was really good. I miss not having him around any more.” He also described recurring dreams about his father since his father’s death and admitted those dreams “eausefd] [him] problems.” And he testified his father was teaching him “how to keep the house going, and about vehicles, and I was learning a lot more from him th[a]n I ever was before.” As we previously stated, Chad testified further that, when he heard about the accident, he suffered an emotional response so severe that he had to be placed on oxygen because he “wasn’t really breathing and sort of passed out.” The parties agree the jury was instructed that loss of companionship and guidance was compensable, as was “pain, grief, sorrow, anguish, stress, shock, and mental suffering.” Chad’s testimony clearly described these kinds of compensable harms.
¶ 19 Similarly, Marsha testified that she relied on her father for assistance and advice, stating “he helped [her] out all the time. When I needed help with things, you know, I could talk to him.” Indeed, when asked to describe what “it meant to [her] to lose [her] father,” she had difficulty continuing her testimony, and the trial court asked her if she “need[ed] a break.” As we have noted, she testified the loss of her father made her feel “a part of [her] [was] missing.” Thus, like Chad, Marsha described a loss of companionship and parental guidance, as well as pain and sorrow.
¶ 20 In its closing argument at trial, GABA made no attempt to discredit or minimize Chad’s and Marsha’s testimony. Indeed, GABA’s counsel stated, “There is nothing that I can say here, and I wish there was, but there is really not, ... to mitigate the loss [to] these children.” GABA’s counsel continued, “[I]t is only right that we acknowledge this loss.” Nor does GABA argue on appeal that Chad’s or Marsha’s testimony was equivocal, inconsistent, or unbelievable. Although GABA correctly notes that Chad and Marsha emphasized their mother’s loss over their own, that alone did not permit the jury to disregard the evidence of their loss.
¶ 21 In support of its position that the jury was free to disregard Chad’s and Marsha’s testimony, the dissent relies, in part, on the Revised Arizona Jury Instructions (Civil) (4th ed. 2005) (RAJI).[5] Those instructions permit a jury to accept or reject all or part of a witness’s testimony and to determine the credibility of witnesses, considering, inter alia, “the quality of his/her memory; the witness’ manner while testifying; [and] whether he/she has any motive, bias or prejudice.” RAJI Prelim. 5. Assuming, arguendo, however, that the jury was given similar *140 instructions here,[6] these instructions do not permit a jury to arbitrarily disregard a witness’s testimony. As we have noted, a jury’s verdict must be supported by the evidence. See Villegas, 16 Ariz.App. at 459, 494 P.2d at 64. Given this rule, a jury’s decision to disregard testimony must have some support.
¶ 22 Nor do we hold, as the dissent suggests, that factors such as the demeanor and motive of witnesses are “superfluous” because the jury is “obligated to accept any statement not explicitly contradicted by another concrete piece of evidence.” There is no need for directly contradicting evidence for a jury to disregard testimony. However, there must be support in the record, however slight, for a jury’s decision to disregard a witness’s testimony. See Carabetta, 12 Ariz. App. at 242-43, 469 P.2d at 476-77. If we permit a jury verdict to stand based purely on speculation that the witness’s demeanor led the jury to disregard that witness’s testimony — and, here, there are two such witnesses — we see no way to distinguish between that jury and a jury that has acted arbitrarily. Thus, if we are to engage in any meaningful review of a jury’s verdict, the verdict must have some support in the record — we should not speculate that reasons for the jury’s verdict, although found nowhere in the record, must nevertheless have been present. Notably, GABA does not argue that Chad’s and Marsha’s demeanor on the stand permitted the jury to disregard their testimony. Indeed, it identifies nothing in the record before us that would justify the jury’s disregarding Chad’s or Marsha’s testimony. See id.
¶ 23 The dissent cites several cases for the general proposition that a jury may disregard the testimony of an interested witness. Although we do not disagree with that sensible rule, we are not persuaded those cases render Division One’s holding in Sedillo erroneous. Although it is a jury’s role to determine credibility, those cases do not hold a jury may do so arbitrarily. Instead, the facts of those cases contain clear reasons for the fact-finder to disregard the relevant testimony and are therefore distinguishable from the matter before us.
¶ 24 In Estate of Reinen v. Northern Arizona Orthopedics, Ltd., 198 Ariz. 283, ¶¶ 11-12, 9 P.3d 314, 318 (2000), a medical malpractice action, our supreme court stated the jury was “not compelled to believe the uncontradieted evidence” of the defendant doctor who testified he would not have changed the plaintiffs treatment had he examined the plaintiff. The plaintiffs expert witness, however, testified a different treatment from what the defendant doctor ordered was necessary, and had the defendant doctor examined the plaintiff and correctly treated him, his injuries might have been averted. Id. ¶¶ 10,13. Although the expert witness’s testimony did not directly contradict the testimony of the defendant doctor that he would not have changed his treatment plan, it certainly cast doubt on the defendant doctor’s credibility. Thus, unlike here, in Estate of Reinen, there was a reason apparent from the record that would have permitted the jury to disregard the defendant doctor’s testimony.
¶ 25 In Nystrom v. Massachusetts Casualty Insurance Co., 148 Ariz. 208, 214, 713 P.2d 1266, 1272 (App.1986), Division One of this court stated that, although “a trial court in civil cases may not arbitrarily reject testimony from a disinterested and unimpeached witness, the trier of fact is not bound by uncontradicted testimony from an interested witness.” (Citation omitted.) The appellate court there, however, was discussing a credibility determination the trial court had had no reason to make at the time of trial, and it directed the trial court to make the determination on remand if necessary. Id. Moreover, there were numerous facts in Nystrom tending to cast doubt on the witness’s credibility, including evidence that he had applied for life insurance policies without disclosing the medical conditions for which he was seeking disability insurance coverage. Id. at 210, 713 P.2d at 1268. Consequently, we are hesitant to rely on the Nystrom court’s statement suggesting a finder of fact may “arbitrarily” disregard the testimony of an inter *141 ested witness when the facts of that case clearly demonstrate the fact-finder did not do so, and even if it had, the record supported that conclusion. Id. at 214, 713 P.2d at 1272.
¶26 The dissent also relies on Premier Financial Services, Inc. v. Citibank (Arizona), 185 Ariz. 80, 86, 912 P.2d 1309, 1315 (App.1995), which states, “a trial court is not bound to accept even the uncontradicted evidence of a disinterested party.” Like Estate of Reinen and Nystrom, however, that case is readily distinguishable. In that case, Division One of this court utilized the procedure described in Torosian v. Paulos, 82 Ariz. 304, 313 P.2d 382 (1957). Premier Fin. Servs., Inc., 185 Ariz. at 84, 912 P.2d at 1313. In Torosian, our supreme court stated that “badges of fraud,” or “ ‘facts which throw suspicion on a transaction, and which call for an explanation,’ ” although not “ ‘conclusive proof,’ ” “ ‘may furnish ... a reasonable inference of fraud.’ ” 82 Ariz. at 312, 313 P.2d at 388, quoting Humbird v. Arnet, 99 Mont. 499, 44 P.2d 756, 761 (1935). The court in Premier Financial Services noted: “It is apparent from an examination of the record in this case that there were several ‘badges of fraud’ easting suspicion about whether a fraudulent conveyance had taken place.” 185 Ariz. at 85, 912 P.2d at 1314. Thus, given the presence of this inference, it was clearly appropriate for the fact-finder to conclude the testimony of the garnishees was insufficient “to dispel the inference of fraud,” and the trial court “did not err in concluding that the transfer ... was a fraudulent conveyance.” Id. at 86, 912 P.2d at 1315. Therefore, again, unlike here, there was evidence in the record — the badges of fraud — permitting the fact-finder to disregard the witnesses’ testimony that there was no fraud.
¶27 We disagree with the dissent’s suggestion that Quinonez supports the trial court’s determination here. In that case, Division One of this court upheld a jury verdict awarding no damages to the husband of the decedent. 144 Ariz. at 198, 696 P.2d at 1347. Although the dissent states that the husband’s evidence of economic loss was uncontested, the facts of that case demonstrate otherwise. The court noted that the decedent had stated she planned to divorce her husband and that, although the husband “did present expert testimony showing economic loss by reason of his wife’s death,” “[t]he evidence ... showed that [their] children were now in the home of a relative and that no charges were being made to [the husband] for this service.” Id. at 198, 696 P.2d at 1347. These facts would certainly permit a jury to disregard the husband’s evidence of economic loss.
If 28 The dissent also asserts “the jury could have inferred that only Elaine, and not the children, suffered a significant loss.” We agree that Chad’s and Marsha’s testimony may fairly be described as lukewarm. And we agree with the dissent that it was their burden to demonstrate damages. See Patania v. Silverstone, 3 Ariz.App. 424, 429, 415 P.2d 139, 144 (1966) (plaintiff has burden of proof in establishing damages). Section 12-613, however, does not specify an evidentiary threshold a plaintiff must meet; it provides only that “the jury shall give such damages as it deems fair and just.” Thus, Chad and Marsha were not required to prove they suffered a “significant loss,” only that they suffered some compensable loss — however slight. Not only, as we discussed above, did they clearly do so, but there is no reason apparent from the record for the jury to have disregarded that evidence. Accordingly, in these narrow circumstances, an award of zero damages is not “fair and just.” § 12-613.
¶29 For the reasons stated above, we conclude Sedillo’s holding is correct. A jury may not properly disregard the testimony of a witness, even an interested one, without some reason to do so that is apparent from the record.[7] GABA has pointed to nothing in the record before us nor have we *142 found anything to suggest such a reason. As we have explained, Chad and Marsha testified unequivocally about facts demonstrating compensable loss. And nothing in the record indicates that testimony was inconsistent or unbelievable, nor was it contradicted in any way. Nor will we speculate that a reason that does not appear in the record, and that GABA does not suggest exists, justified the jury’s verdict. Thus, the jury was not at liberty to disregard Chad’s and Marsha’s testimony and fail to award them at least some damages. See Villegas, 16 Ariz.App. at 459, 494 P.2d at 64.
¶30 Accordingly, we conclude the trial court abused its discretion by denying Chad and Marsha’s motion for a new trial on the issue of damages. See Mullin, 210 Ariz. 545, ¶ 2, 115 P.3d at 141; see also Speer v. Donfeld, 193 Ariz. 28, ¶ 9, 969 P.2d 193, 196 (App.1998) (trial court abuses its discretion if it “base[s] its ruling on an error of law”). Therefore, we do not address Chad and Marsha’s argument that GABA conceded during closing argument that they had suffered damages. We reverse the trial court’s ruling and remand the case to the trial court for further proceedings consistent with this decision.
CONCURRING: PETER J. ECKERSTROM, Presiding Judge.

. The parties agree the jury was properly instructed to "decide the full amount of money that will reasonably and fairly compensate" Chad and Marsha for their "loss of love, affection, companionship, care, protection and guidance”; "pain, grief, sorrow, anguish, stress, shock, and mental suffering”; and lost services. The jury instructions, however, are not contained in the record on appeal, nor are the jury verdicts.

. The court also ruled the trial court had erred in denying additur or a new trial to those plaintiffs that had been awarded some damages. Sedillo v. City of Flagstaff, 153 Ariz. 478, 482, 737 P.2d 1377, 1381 (App.1987).

. The only plaintiff in Sedillo whose alleged negligence arguably contributed to the decedent’s death was awarded some damages. 153 Ariz. at 480, 482, 737 P.2d at 1379, 1381.

. Although Sedillo has never been cited for its holding, that does not mean it is clearly erroneous. And, although a denial of review has no precedential value, Morgan v. Carillon Investments, Inc., 207 Ariz. 547, n. 1, 88 P.3d 1159, 1162 n. 1 (App.2004), our supreme court declined to review the decision when requested.

. These instructions are created by the State Bar of Arizona and, as the dissent correctly notes, are not approved by our supreme court. See State v. Logan, 200 Ariz. 564, ¶ 12, 30 P.3d 631, 633 (2001).

. The preliminary jury instructions are not contained in the record on appeal. GABA’s counsel asserted at oral argument that the standard preliminary instructions were given.

. Additionally, nothing in Sedillo prohibits a jury from awarding nominal damages. Cf., e.g., Villatoro v. Concepcion, 671 So.2d 216, 217 (Fla.Dist. Ct.App.1996) ("A zero verdict for loss of consortium cannot stand where liability is conceded and there is evidence to support a verdict of nominal damages.”); Shaw v. Peterson, 376 So.2d 433, 434-35 (FIa.Dist.Ct.App.1979) (”[T]he jury’s verdict of zero damages for [the plaintiff] cannot stand. Since the record contains undisputed evidence of her loss of consortium as a result of [her husband’s] injuries, she was entitled to receive at least nominal damages.”).