158 P.3d 255

Theodor J. GIROUARD III, surviving parent of Nicholas D. Girouard, deceased, Plaintiff/Appellant,

v.

SKYLINE STEEL, INC., Defendant/Appellee.

No. 1 CA–CV 06–0093.

Court of Appeals of Arizona, Division 1, Department A.

May 24, 2007.

Warnock MacKinlay & Associates PLLC by Brian R. Warnock, Krista M. Carman, Phoenix, Attorneys for Plaintiff/Appellant.

Douglas & Cox LLP by Dean R. Cox, Phoenix, Attorneys for Defendant/Appellee.

## OPINION

KESSLER, Judge.

¶ 1 In this case we are called upon to determine whether evidence of the manner of a decedent's death is admissible on the issue of damages in a wrongful death claim. We hold that such evidence is admissible, but only insofar as it is relevant to the survivor's own mental anguish resulting from the death and not the suffering of the decedent prior to death.

¶ 2 Plaintiff–Appellant Theodor J. Girouard III ("Girouard") appeals the superior court's entry of judgment in his wrongful death action, filed after the death of his son, Nicholas D. Girouard ("the decedent"). Girouard argues the superior court erred by excluding all evidence of the manner of the decedent's death. He further argues the court erred by awarding Defendant–Appellee Skyline Steel, Inc. ("Skyline") costs under Rule 68 of the Arizona Rules of Civil Procedure. For the following reasons, we vacate the judgment and remand for a new trial.

## FACTUAL AND PROCEDURAL HISTORY

¶ 3 The decedent perished after an automobile collision caused by the negligent acts of a Skyline employee. The record reflects that, after the collision, the decedent's vehicle burst into flames with the decedent pinned in

the vehicle. While there is conflict in the evidence as to whether the decedent was conscious at this time there does not appear to be any dispute that he died of thermal and inhalation injuries related to the fire.

¶ 4 Girouard subsequently filed suit in superior court, claiming he was entitled to damages pursuant to Arizona's Wrongful Death Act, sections 12–611 et seq. of the Arizona Revised Statutes.[1] Skyline answered, admitting that its employee was negligent and that this negligence caused the automobile collision in which the decedent died. As a result, the only issue at trial was the amount of damages.

¶ 5 In the joint pretrial statement, Girouard listed as witnesses two people who had been present at the scene of the accident when the decedent died. He also stated his intent to introduce the accident report, the autopsy report, news videotapes of the fire, and several photographs. Skyline objected to these witnesses and exhibits on the grounds of relevance.

¶ 6 Skyline filed a motion in limine to preclude evidence pertaining to the manner of the decedent's death. Skyline argued that such evidence related to the events leading up to the death of the decedent, and did not pertain to the actual death of the decedent. Thus, it was not relevant, and was unduly prejudicial. Girouard responded that evidence pertaining to the manner of the decedent's death was relevant to the extent of his mental anguish resulting from the death. Girouard attached an excerpt of his deposition, in which he described how he learned there had been a fire from his daughter-in-law, then learned from the police that the fire had been "horrific" enough that there was nothing of the decedent's remains to identify, and later learned from the police report that the decedent had burned alive. He stated in the deposition that these facts were a great source of pain for him. The superior court granted the motion in limine.

¶ 7 Girouard filed a motion to reconsider and made an offer of proof. In his offer of proof, Girouard stated:

If [Girouard] were permitted, he would testify he saw the video on television, the news broadcast showed the burning vehicle, the tarp beside the vehicle that he assumed was his son's body.

He called down to the medical Examiner's Office so he could go down and identify the body to spare his daughter-in-law the anguish. He'll testify that he was told haven't you spoken to the investigating officer, there's really no reason to do that. He will testify he spoke to the investigating officer who told him didn't you know there was a fire, there's nothing to identify.

He'll testify that he spoke to the funeral director going down to see his son and the funeral director told him the same thing, there is nothing there. He'll testify that he obtained the wedding ring off his son's hand that was scorched and had to have it cleaned before he would give it to his daughter-in-law.

He will testify that he read the police report, he read the witness statement of the witness Buchanan and who we would have liked to brought before the jury whose witness statements say Nick's feet were trapped, he couldn't be extricated and he was alive and the fire consumed him.

And [Girouard] was aware of all that immediately after the death and he will carry that to his grave and we submit it goes significantly to the anguish. It doesn't go to the matter of the negligent acts of Skyline and their employee but it goes to his damage and his loss.

He would like to testify that it had to be a closed coffin. He was not allowed to say goodbye to his son and that's another item of damage that he has to carry with him.

The superior court denied the motion to reconsider without explanation. The court al-

---

1. In addition to Skyline, Girouard named as defendants Skyline Industrial, Inc. ("Skyline Industrial") and the Skyline employee who had been driving the vehicle. The Skyline employee was dismissed from the lawsuit eleven months before the trial commenced. Skyline Industrial was apparently dismissed from the lawsuit shortly before trial commenced.

The nature of Skyline's relationship to Skyline Industrial is not apparent from the record.

lowed testimony that there was a closed casket at the decedent's funeral, but precluded any testimony or evidence indicating that there had to be a closed casket.

¶ 8 A jury awarded Girouard $ 250,000.00 in damages. Skyline requested an award of costs pursuant to Arizona Rule of Civil Procedure 68(d) on the grounds that Skyline had served an offer of judgment on Girouard for $ 300,000.00. Girouard objected on the grounds that the offer of judgment was not apportioned between the remaining defendants. The court entered judgment, awarding costs to Skyline and finding that apportionment was not necessary in this case. Girouard timely appealed. This Court has jurisdiction pursuant to section 12–2101(B) of the Arizona Revised Statutes (2003).

## DISCUSSION

¶ 9 Girouard challenges the superior court's preclusion of any evidence suggesting the manner of the decedent's death and the allowance of costs as a Rule 68 sanction. We hold that the superior court erred by precluding evidence suggesting the decedent's manner of death insofar as it was relevant to the extent of Girouard's mental anguish resulting from the death, but not from the actual or perceived pain and suffering of the decedent. Accordingly, we reverse and remand for a new trial consistent with this opinion. Further, since the issue may recur on remand, we address the award of Rule 68 sanctions and hold the court did not err by awarding such sanctions.

### I. Manner of Death Evidence

¶ 10 We will not disturb the superior court's ruling on the admissibility of evidence unless it abused its discretion or misapplied the law. *Conant v. Whitney,* 190 Ariz. 290, 292, 947 P.2d 864, 866 (App.1997). The process of weighing the prejudicial impact of evidence against its probative value is a function peculiarly within the function of the trial court, which we review for an abuse of discretion. *Crackel v. Allstate Ins. Co.,* 208 Ariz. 252, 266, ¶ 53, 92 P.3d 882, 896 (App.2004). We review de novo any con-

struction of a statute. *Yauch v. Southern Pac. Trans. Co.,* 198 Ariz. 394, 399, ¶ 10, 10 P.3d 1181, 1186 (App.2000).

¶ 11 While relevant evidence is generally admissible, Ariz. Rule of Evidence 402, a court may exclude relevant evidence if "its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Ariz. R. Ev. 403. A Rule 403 analysis begins with assessment of the probative value of the evidence with respect to the issue for which it is offered. *Shotwell v. Donahoe,* 207 Ariz. 287, 295, ¶ 34, 85 P.3d 1045, 1053 (2004). This is balanced against the potential prejudice to the opposing party, i.e., the extent to which it suggests improper bases for a decision, such as emotion, sympathy, or horror. *Id.* If the issue is undisputed or other evidence that is less inflammatory but equally probative is available, then it is more likely that the potential prejudice caused by introducing such evidence outweighs the probative value of the evidence. *Id.*

¶ 12 The sole issue at trial was the extent of Girouard's damages compensable under the Wrongful Death Act. Thus, the admissibility of the evidence of the decedent's manner of death in this case depends upon its relevance and probative value with regard to the damages Girouard may claim under the Wrongful Death Act. If the damages were not permitted under the Wrongful Death Act, the manner of death evidence would be neither relevant nor probative of such damages. We are therefore compelled to examine the extent of compensable damages under the Wrongful Death Act to determine the admissibility of the evidence offered.

¶ 13 The Wrongful Death Act provides for damages as follows:

> In an action for wrongful death, the jury shall give such damages as it deems fair and just with reference *to the injury resulting from the death* to the surviving parties who may be entitled to recover ...

A.R.S. § 12–613 (2003) (emphasis supplied).[2] Our supreme court has interpreted "injury

---

2. The statute further provides for losses related to "the mitigating or aggravating circumstances

resulting from the death" to include "anguish, sorrow, stress, mental suffering, pain and shock" resulting from the death. *City of Tucson v. Wondergem,* 105 Ariz. 429, 433, 466 P.2d 383, 387 (1970). Girouard argues that the circumstances surrounding the decedent's death increased his mental anguish, making some of his offered evidence admissible. We agree to the extent that such evidence relates to mental anguish Girouard suffered resulting from the manner of death rather than the pain, real or perceived, suffered by the decedent prior to death.

 ¶ 14 The Legislature has provided no explicit guidance as to whether compensation should be limited to mental anguish arising solely from the cessation of the decedent's life or further encompass mental anguish stemming from the occasion or manner in which the decedent died. We construe statutory language to give words their ordinary meaning absent a legislative intent otherwise. *Walgreen Ariz. Drug Co. v. Ariz. Dep't of Revenue,* 209 Ariz. 71, 73, ¶ 12, 97 P.3d 896, 898 (App.2004). "Death" includes the mere state of death and the act of dying. *See The Compact Edition of the Oxford English Dictionary* 655 (1971) (death is "[t]he act or fact of dying; the end of life; the final cessation of the vital functions of an animal or plant[;] ... The state of being dead; the state or condition of being without life, animation, or activity."); *Black's Law Dictionary* 428 (8th ed.2004) (death is defined concurrently as "the ending of life" and "the cessation of all vital functions and signs."). Thus, in both common and legal usage, "death" can refer to the manner in which a person's mortal life ceases and to the mere fact of that cessation.

¶ 15 Our holding on the relevance of the manner of death in wrongful death action is consistent with the remedial objective behind the Wrongful Death Act to compensate survivors for their losses. *Summerfield v. Super. Ct.,* 144 Ariz. 467, 476, 698 P.2d 712, 721 (1985). Given this objective, defining "death" for which mental anguish damages are compensable under the Act is to understand what death means from the standpoint of the survivor who must be compensated. This approach is buttressed by the very allowance of mental anguish damages under *Wondergem,* because "[w]hen we speak of recovery for the beneficiaries' mental anguish, we are primarily concerned, not with the benefits they have lost, but with the issue of compensating them for their harrowing experience resulting from the death of a loved one." S. Speiser, *Recovery for Wrongful Death 2d* § 3.52 (1975) ("Speiser").

¶ 16 In light of the remedial purpose of the Wrongful Death Act, the statute permits a recovery not just for the fact of the decedent's death, but also for the manner in which the decedent dies to the extent the manner of death makes the experience more difficult for the survivor. From the standpoint of the survivor who must be compensated for the harrowing experience of losing a loved one, death may not simply be the cessation of the decedent's life, as Skyline posits. Rather, death, to a grieving survivor, may in fact encompass the scope of the manner in which the decedent's life ceased.[3]

¶ 17 Thus, insofar as the manner of a decedent's death may have added to a wrongful death plaintiff's anguish resulting from the death, as opposed to anguish caused by knowledge of premortem pain suffered by

attending the wrongful act, neglect or default." A.R.S. § 12–613. This clause has been interpreted as relating solely to punitive damages. *Welch v. McClure,* 123 Ariz. 161, 163, 598 P.2d 980, 982 (1979). Girouard stipulated to dismiss any and all punitive damage claims prior to trial. Thus, the circumstances surrounding the negligent acts of Skyline's employees are not relevant.

**3.** This view is supported by social scientists. As one text explains:

Just as no two persons are alike, no two experiences of grief are alike. The circumstances of death, the personality and social roles of the bereaved, his or her relationship with the de-

ceased—these are among the factors that influence the nature of grief. An understanding of these factors can provide not only knowledge about the processes of grief, but also some clues about why some deaths seem especially devastating to survivors.
❖ ❖ ❖

Each mode of death, each set of circumstances in which death occurs, can uniquely affect the survivor's ability to integrate the loss.
Lynne Ann DeSpelder & Albert Lee Strickland *The Last Dance: Encountering Death and Dying* 203, 206 (1st ed.1983).

the decedent, it is highly relevant to the plaintiff's claim for damages. Our conclusion is supported by decisions from other jurisdictions which, like Arizona, have construed their wrongful death statutes for the "injury resulting from the death" to permit an award of emotional distress of the statutory beneficiary. Those courts have permitted evidence relating to the manner of death to the extent that the manner of death increased the emotional distress of the statutory plaintiff. *See Campbell v. Keystone Aerial Surveys, Inc.*, 138 F.3d 996, 1004–05 (5th Cir.1998) (facts that decedent was decapitated and his body was burned were probative of survivors' mental anguish, applying V.T.C.A. Civ. Prac. & Rem. § 71.010); *St. Louis Southwestern Railway Co. v. Pennington*, 261 Ark. 650, 553 S.W.2d 436, 450 (1977) (under Arkansas Stat. Ann. § 27–906 (1947), Ark.Code Ann. § 16–62–102, relating to injuries resulting from death, violence and suddenness of death is a factor in evaluating mental anguish). *See also Martin v. United States*, 448 F.Supp. 855, 880 (D.Ark.1977) ("Mental anguish will vary in every case with the nervous temperament of the individual, the ability to withstand shock, *circumstances of the death,* and innumerable other factors.") *reversed on other grounds* 586 F.2d 1206 (8th Cir.1978).[4] Courts in jurisdictions applying common law principles or wrongful death statutes not expressly providing for damages "resulting from death" have similarly held that evidence of the nature of death may be admissible in the appropriate case. *E.g., Wagner v. Islamic Republic of Iran*, 172 F.Supp.2d 128, 136–37 (D.D.C.2001) (finding that federal common law permits evidence of "unforeseen and horrific" nature of death in determining emotional distress damages suffered by family following death). *See also Jackson v. Cockill*, 149 W.Va. 78, 138 S.E.2d 710, 717 (1964) (evidence concerning decedent's prior arrests for drunkenness not ad-

missible when there was no evidence survivor was aware of that conduct, which would have decreased her sorrow).

¶ 18 Skyline argues that under *Mullen v. Posada Del Sol Health Care Center*, 169 Ariz. 399, 819 P.2d 985 (App.1991), a wrongful death plaintiff is precluded from collecting damages stemming from the circumstances of a decedent's death. We disagree. In *Mullen*, the issue was whether a wrongful death plaintiff's testimony concerning the negligent care her decedent son received while he was alive was admissible to determine damages in her wrongful death claim. 169 Ariz. at 399, 819 P.2d at 985. As the defendant health care facility had admitted liability prior to trial, the only issue at trial was the measure of damages. *Id.* at 400, 819 P.2d at 986. The plaintiff argued that the testimony was relevant because her grief partially involved guilt for not having transferred her son to another care facility before he died. *Id.* This Court held that the testimony was not admissible to determine wrongful death damages because they pertained to her injuries resulting from prior negligent acts, rather than her injuries resulting from the death. *Id.* Thus, the problematic alleged injury in that case was grief resulting from the event of the defendant's negligence prior to the death, rather than the event of the decedent's death. *See* 169 Ariz. at 400, 819 P.2d at 986. In contrast, Girouard claims his grief was increased by the circumstances concerning the event of the decedent's death, not the Skyline employee's negligence.

¶ 19 While evidence of the manner of death is relevant to mental anguish suffered by the survivor, we reiterate that compensation in a wrongful death action is limited to "injury resulting from *the death.*" A.R.S. § 12–613 (emphasis supplied). Accordingly,

---

**4.** Skyline relies largely upon *Beaty v. Buckeye Fabric Finishing Co.,* 179 F.Supp. 688 (E.D.Ark. 1959), for the proposition that a wrongful death plaintiff may not recover damages for mental anguish resulting from the manner of the death. That case does not support such a proposition. The court in that case was faced with two different claims urged by the survivor: one for mental anguish damages arising from the wrongful death of her father, and a separate claim for

emotional distress arising from having witnessed the death of her father. 179 F.Supp. at 696–97. There is no indication that the court in that case was presented with the question of whether the manner of the decedent's death was relevant to her wrongful death claim. In any event, the Arkansas Supreme Court later held that the manner of death is a factor in evaluating the survivor's mental anguish for purposes of a wrongful death claim. *Pennington,* 553 S.W.2d at 450.

as noted above, a survivor may not recover for mental anguish resulting from the negligent acts of the defendant prior to the decedent's death, and such evidence is not relevant to the issue of damages. *Mullen,* 169 Ariz. at 400, 819 P.2d at 986. Nor may a survivor recover for mental anguish resulting from actual or perceived pain and suffering experienced by the decedent during the time leading up to death because such period of time precedes the death of the decedent. Speiser at § 14.8. Indeed, since the Legislature has explicitly precluded a decedent's estate from recovering damages for his own pain and suffering, A.R.S. section 14–3110 (2005), we think judicial creation of a wrongful death claim to allow a survivor to recover damages arising from such pain and suffering would be imprudent.[5] Any policy decision to fill the gap precluding recovery for a decedent's pain and suffering under either cause of action, is best left to the sound discretion of the Legislature. *See Jeter v. Mayo Clinic of Arizona,* 211 Ariz. 386, 399, ¶ 54, 121 P.3d 1256, 1269 (App.2005) (expansion of definition of viability for wrongful death claim involves policy determinations best left to Legislature). Thus, evidence of a decedent's conscious pain and suffering before his death is not relevant to a survivor's damages in a wrongful death claim.[6]

¶ 20 With these principles in mind, we turn to the facts of this case. The court precluded *any* evidence that may have indicated the decedent died in a fire, even precluding Girouard from presenting evidence of the necessity of a closed casket funeral. The superior court did not articulate the basis for this ruling. For several reasons, the trial court erred. First, the exclusion of the evidence that the manner of death required a closed

casket service was error. Such evidence clearly is limited to Girouard's mental distress resulting from the death and not the actual or perceived premortem suffering of the deceased. Its exclusion was prejudicial because it precluded Girouard from presenting a full picture of the extent of his mental anguish compensable in his wrongful death claim. Second, the breadth of the court's ruling, excluding *all* evidence that pertained to the decedent's manner of death, indicates that the court's decision was not the result of a discretionary balancing process under Arizona Rule of Evidence 403. For the benefit of reviewing courts, trial courts should explain a Rule 403 decision on the record. *Shotwell,* 207 Ariz. at 296, ¶ 33, 85 P.3d at 1053. By essentially sterilizing the trial record of any reference to the manner in which the decedent died, the court presumably ruled that the decedent's manner of death was completely inadmissible at trial. This was error.[7]

¶ 21 In contrast to the evidence of the manner of death relating to the necessity of a closed casket service, Girouard proffered other evidence which was or could be properly excluded. It appears from the record that Girouard intended to present evidence indicating that the decedent may have been conscious and "burned alive." This is evidence pertaining to the decedent's pre-mortem pain and suffering, and is not relevant to Girouard's wrongful death claim.[8] *See Mullen,* 169 Ariz. at 400, 819 P.2d at 986. Likewise, the record indicates that Girouard wished to present evidence and witness accounts of the events that he may not have seen or been aware of. As this case is concerned with Girouard's *own* mental anguish resulting from the death, evidence pertaining to the

5. *See also Gandy v. United States,* 437 F.Supp.2d 1085, 1086–87 (D.Ariz.2006) (wrongful death and survival claims are separate, one compensating statutory beneficiaries for their loss, the other providing for recovery of damages by the decedent up to the time of death).

6. We recognize that circumstances of a decedent's final moments of life may be as pertinent to a survivor's anguish as those of the death itself. *See* Browning, Robert, "Porphyria's Lover" *Norton Anthology of English Literature* 1982–83 (6th ed. 1996) ("No pain felt she;/I am quite sure she felt no pain."). Any decision to permit

compensation for such loss is best left to the Legislature.

7. Moreover, given the fact that the in limine ruling occurred over two years ago, a remand on this record to perform a Rule 403 balancing in a vacuum would be highly impractical.

8. For this reason, Skyline's argument that the evidence indicates the decedent was not conscious when he was engulfed in flames has no bearing on our analysis.

death of which Girouard was unaware has little probative value.

¶ 22 Skyline asserts that evidence pertaining to the manner of the decedent's death is unduly prejudicial. The nature of the decedent's death may have tended to suggest a damage award based upon emotion, sympathy, or horror, above and beyond Girouard's compensable pain. We cannot hold, however, that the possibility of such a ruling by the jury supports the *complete* exclusion of *all* evidence demonstrating how Girouard's grief was impacted by the manner in which the decedent perished. We leave it to the trial court on remand to determine what proffered evidence should be admitted under the reasoning of this opinion, to balance the relevant evidence against any undue prejudice under Rule 403 and to consider less restrictive alternatives such as limiting jury instructions. *See Shotwell,* 207 Ariz. at 296, ¶ 33, 85 P.3d at 1054.

¶ 23 The superior court erred by precluding Girouard from presenting any evidence relating to the manner of the decedent's death. Insofar as the manner of the decedent's death increased Girouard's mental anguish, it is relevant to his damages in his wrongful death claim. To the extent the evidence of manner of death dealt with premortem pain and suffering, it is irrelevant. Other evidence may be admissible depending on whether it reflects Girouard's mental anguish from the manner of death, rather than the suffering of the decedent and any balancing under Rule 403. Accordingly, we vacate the judgment and leave it to the superior court's discretion at a new trial on remand to determine what limitations it should employ to protect the interests of Skyline while allowing Girouard to present evidence relevant to his claim, including conducting an appropriate Rule 403 analysis applying this decision.

## II. Award of Costs

¶ 24 Girouard also challenges the superior court's award of sanctions to Skyline under Rule 68(d). We address this issue to guide the superior court if the issue recurs on remand. Girouard argues that because Skyline and Skyline Industrial did not present an apportioned offer of judgment, the superior court erred by granting Skyline's request for Rule 68 sanctions. We review the meaning and effect of a court rule de novo. *Pima County v. Pima County Law Enforcement Merit Sys. Council,* 211 Ariz. 224, 227, ¶ 13, 119 P.3d 1027, 1030 (2005).

¶ 25 Rule 68(d) provides, in relevant part, "If the judgment finally obtained is equal to, or more favorable to the offeror than, the offer, the offeree must pay, as a sanction, those reasonable expert witness fees and double the taxable costs of the offeror ... incurred after the making of the offer...." Ariz. R. Civ. P. 68(d). When an offer of judgment is made on behalf of more than one party and that offer is not apportioned between the parties, they may be invalid for the purposes of imposing Rule 68 sanctions. *Duke v. Cochise County* 189 Ariz. 35, 41, 938 P.2d 84, 90 (App.1996). Not all joint offers are precluded, though; when the relationship between the offerors is such that the unapportioned offer, compared to the final judgment, provided the offerees the ability to make a meaningful choice between accepting the order and going forward with litigation, Rule 68 sanctions may be awarded. *See Sheppard v. Crow–Barker–Paul No. 1,* 192 Ariz. 539, 549, ¶¶ 56–58, 968 P.2d 612, 622 (App.1998).

¶ 26 Girouard argues that he brought his lawsuit against both Skyline and Skyline Industrial because he did not know which of the two companies was liable for the negligent driver's actions. He contends that when he received the offer of judgment, he did not know which defendant was liable for the negligent driver's actions or if both defendants had some relationship to the driver. Yet, Skyline admitted in its answer that the driver was negligent, that his negligence was the cause of the collision, and that at the time of the collision the driver was employed by Skyline and acting within the course and scope of his employment. Girouard identifies no reason why he would continue to believe that Skyline Industrial was liable for Nicholas' wrongful death. Indeed, Girouard agreed to dismiss Skyline Industrial from the

lawsuit before trial.[9] Thus, the record does not support Girouard's contentions.

¶ 27 The record supports the superior court's ruling that the offer need not be apportioned in this case. Girouard's complaint asserted his claims against Skyline and Skyline Industrial jointly and severally. The joint offer of judgment was an offer to Girouard's claim fully and finally, thereby avoiding a trial. Regardless of whether Skyline or Skyline Industrial, or both, intended to pay the settlement amount, it was clear from the offer that Girouard would receive only one payment for settlement of his claim against both Skyline and Skyline Industrial. Girouard was able to evaluate the offer of judgment adequately and make a meaningful decision regarding whether to proceed to trial. Accordingly, the superior court properly subjected Girouard to the application of Rule 68(d).

### CONCLUSION

¶ 28 The superior court erred by excluding all evidence of the manner of the decedent's death, and we must therefore reverse. We find the court did not err in its award of costs to Skyline under Rule 68. We remand this matter for proceedings consistent with this opinion.

CONCURRING: G. MURRAY SNOW, Presiding Judge, and DANIEL A. BARKER, Judge.

---

9. Moreover, while certainly not dispositive, Girouard does not contest that he submitted an offer of judgment to Skyline and Skyline Industrial in the same form as that to which Girouard now objects.