258 P.3d 172

**Elizabeth WALSH, surviving wife of Jerome Walsh, deceased; and Annette Forrester, Scott Walsh, Steven Walsh, and Lisa Cline, surviving children of Jerome Walsh, deceased, Plaintiffs/Appellants,**

v.

**ADVANCED CARDIAC SPECIALISTS CHARTERED, Defendant/Appellee.**

No. 1 CA–CV 09–0751.

Court of Appeals of Arizona, Division 1, Department A.

May 26, 2011.

Law Office of Scott E. Boehm, P.C. By Scott E. Boehm, Phoenix, Co–Counsel for Plaintiffs/Appellants.

Copple & Copple, P.C. By Steven D. Copple, S. Christopher Copple, Phoenix, Co–Counsel for Plaintiffs/Appellants.

Jennings, Strouss & Salmon, P.L.C. By John J. Egbert, Phoenix, Co–Counsel for Defendant/Appellee.

Jardine, Baker, Hickman & Houston, P.L.L.C. By Neil C. Alden, Curtis M. Bergen, Phoenix, Co–Counsel for Defendant/Appellee.

**OPINION**

BARKER, Judge.

¶ 1 Plaintiffs Annette Forrester, Scott Walsh, Steven Walsh, and Lisa Cline ("the children") appeal from the superior court's award of zero dollars in damages for the wrongful death of their father. They claim that this award is insufficient under Rule 59(a)(5) of the Arizona Rules of Civil Procedure. The trial court considered the issue to have been waived. We uphold the jury's right to award zero damages and remand for the court to rule on the Rule 59(a)(5) motion

for new trial consistent with the principles that follow.

### Facts and Procedural History

¶ 2 This appeal arises out of a claim for the wrongful death of Jerome Walsh brought by his wife, Elizabeth Walsh, and his surviving adult children. The liability facts are uncontested on this appeal.

¶ 3 Jerome and Elizabeth Walsh were lifetime residents of Minnesota. In December, 2003, Jerome and Elizabeth were in Arizona when Jerome became ill. Jerome's primary care physician referred him to Defendant Warren Zeitlin.[1] Jerome was treated by Dr. Zeitlin and various other doctors who were all employed by Defendant Advanced Cardiac Specialists. The Walshes returned to Minnesota, and their son Scott Walsh arranged to have Jerome seen at the Mayo Clinic located there. Jerome entered the Mayo Clinic on March 17, 2009. He died the following day of endocarditis, a form of heart infection. Jerome's wife and the children claimed that Advanced Cardiac Specialists' employees failed to diagnose and cure Jerome's heart infection, thus causing his death.

¶ 4 At trial, Elizabeth Walsh and the children testified extensively as to their relationship with Jerome. This testimony was not contested by Defendants; their counsel did not cross-examine the witnesses on this issue.

¶ 5 On May 26, 2009, the jury in the superior court found in favor of Plaintiffs on their wrongful death claim against Advanced Cardiac Specialists and its employees. It awarded damages of $1,000,000 to wife Elizabeth Walsh and made a finding of zero damages for each of the children. The jury handwrote "0" on the verdict form in the space for damages by each child's name.

¶ 6 After the jury was discharged, the children filed a motion for a new trial under Rule 59(a)(5) of the Arizona Rules of Civil Procedure stating that our decisions in *White v. Greater Arizona Bicycling Ass'n*, 216 Ariz. 133, 163 P.3d 1083 (App.2007), and *Sedillo v. City of Flagstaff*, 153 Ariz. 478, 737 P.2d 1377

(App.1987), mandated an award of at least nominal damages. Defendants argued that the children's motion should have been brought under Rule 49(c) before the jury was discharged. Accordingly, Defendants asserted that the children's claim was untimely and waived. The court agreed with Defendants and dismissed the children's motion. The children timely appealed the trial court's ruling. We have jurisdiction under Arizona Revised Statutes ("A.R.S.") section 12–2101(B) (2003).

### Discussion

### 1. Whether a Jury May Return a Verdict of Zero Damages on a Wrongful Death Claim

¶ 7 On appeal, the children argue that the trial court erred in holding that their motion was waived under Rule 49(c) of the Arizona Rules of Civil Procedure. They further assert that our previous holdings in *White*, 216 Ariz. 133, 163 P.3d 1083, and *Sedillo*, 153 Ariz. 478, 737 P.2d 1377, require us to reverse and remand for a new trial on damages. The trial court's ruling on waiver is premised on the required application (by the trial court) of our holdings in *White* and *Sedillo*. In short, the trial court determined that *White* and *Sedillo* require at least some damages, and because the verdict form was returned without any damages, the verdict was inconsistent under the holdings of those two cases. Because that objection was not made with the jury present, the trial court found the issue waived.

¶ 8 Both *White* and *Sedillo* were split-panel decisions from this court. As set forth below, we agree with each dissent's proposed outcome; namely, that *White* and *Sedillo* were wrongly decided and a jury's verdict of zero damages in a statutory wrongful death case can be a permissible verdict. As such, Rule 49(c) is not implicated, and the waiver issue is moot.

### a. The Difference Between a Wrongful Death Claim and a Traditional Negligence Claim

¶ 9 The critical aspect of our analysis is the difference between a statutory

---

1. Dr. Zeitlin is not a party to this appeal.

wrongful death claim and a negligence claim. In a traditional negligence claim, damages must be proved for a claim to exist. *Glaze v. Larsen*, 207 Ariz. 26, 29, ¶ 15, 83 P.3d 26, 29 (2004). The four traditional elements for a negligence claim are duty, breach of that duty, causation, and damages. *Gipson v. Kasey*, 214 Ariz. 141, 143, ¶ 9, 150 P.3d 228, 230 (2007) ("To establish a claim for negligence, a plaintiff must prove four elements: (1) a duty requiring the defendant to conform to a certain standard of care; (2) a breach by the defendant of that standard; (3) a causal connection between the defendant's conduct and the resulting injury; and (4) actual damages."). Where there are no damages in a negligence case, there is simply no cause of action upon which a plaintiff can recover. *Glaze*, 207 Ariz. at 29, ¶ 15, 83 P.3d at 29. Thus, were a jury to find in favor of a plaintiff on a negligence matter and award zero damages, the verdict would be defective as a matter of law.

 ¶ 10 A wrongful death claim, however, is essentially a creature of statute—not the common law. *In re Lister's Estate*, 22 Ariz. 185, 187, 195 P. 1113, 1113 (1921) ("Under the common law there was no right of action for damages for wrongful death. The right is statutory and was originally provided for in England by what is known as Lord Campbell's Act.").[2] The statutory framework for a wrongful death claim differs sub-stantially from a common law negligence claim. Our statutory scheme provides that "[w]hen death of a person is caused by wrongful act, neglect or default, ... the person who ... would have been liable if death had not ensued shall be liable to an action for damages." A.R.S. § 12–611.[3] The statutory scheme then directs that

> the jury shall give such damages as it deems fair and just with reference to the injury resulting from the death to the surviving parties who may be entitled to recover, and also having regard to the mitigating or aggravating circumstances attending the wrongful act, neglect or default.

A.R.S. § 12–613. Thus, unlike a negligence claim, damages is not an essential element of a wrongful death claim. Rather, a person who, absent the death, "would have been liable" for the act that caused the death, now becomes "liable to an action for damages" to those whom the statute specifies. A.R.S. § 12–611. In that action, the jury is to "give such damages as it deems fair and just." A.R.S. § 12–613. The statutory language does not preclude an award of zero damages if that is the amount the fact finder determines to be "fair and just." *Id.*

¶ 11 In construing statutes, we follow the legislature's pronouncements. "We first consider the statute's language 'because we ex-

2. The Arizona Supreme Court has engaged in an extended discussion of the history of the statutory right and its relation to common law. *Summerfield v. Superior Court*, 144 Ariz. 467, 470–74, 698 P.2d 712, 715–19 (1985). The court began its discussion by stating that "[t]his court has followed many others in stating that recovery for wrongful death is purely a creature of statute, there being no recovery at common law." *Id.* at 470, 698 P.2d at 715. As part of its conclusion, the court summarized: "This excursion into common law history and principle does not necessarily lead us to the conclusion that a wrongful death action is recognized at common law, nor that such an action should be allowed irrespective of legislative intention or pronouncement. We need not solve that problem." *Id.* at 473, 698 P.2d at 718. *Summerfield*'s conclusion as to how we should construe a wrongful death statute is identical to what we apply here, regardless of whether *Summerfield* opened the door as to whether a wrongful death statute has common law origins. That conclusion is as follows: "[T]he solution [to the problem of statutory inter-

pretation] must be found in a study of the statute, the best method to further the general goal of the legislature in adopting such a statute, and common law principles governing its application." *Id.* at 475, 698 P.2d at 720.

3. The full text of A.R.S. § 12–611 (2003) provides as follows:

**Liability**

When death of a person is caused by wrongful act, neglect or default, and the act, neglect or default is such as would, if death had not ensued, have entitled the party injured to maintain an action to recover damages in respect thereof, then, and in every such case, the person who or the corporation which would have been liable if death had not ensued shall be liable to an action for damages, notwithstanding the death of the person injured, and although the death was caused under such circumstances as amount in law to murder in the first or second degree or manslaughter. A.R.S. § 12–611.

pect it to be the best and most reliable index of a statute's meaning.'" *Zamora v. Reinstein,* 185 Ariz. 272, 275, 915 P.2d 1227, 1230 (1996) (quoting *State v. Williams,* 175 Ariz. 98, 100, 854 P.2d 131, 133 (1993)). When statutory language "is plain and unambiguous, courts generally must follow the text as written." *Canon Sch. Dist. No. 50 v. W.E.S. Constr. Co.,* 177 Ariz. 526, 529, 869 P.2d 500, 503 (1994). This applies with particular force here because a wrongful death claim is statutory in nature. *Bowslaugh v. Bowslaugh,* 126 Ariz. 517, 519, 617 P.2d 25, 27 (1979) ("A cause of action for wrongful death is purely statutory in origin and we must adhere to the plain language of the statute, leaving any deficiencies or inequities to be corrected by the legislature."); *see also In re Estate of Winn,* 225 Ariz. 275, 277, ¶ 12, 237 P.3d 628, 630 (App.2010) ("It is for the legislature to make policy decisions about the scope of recoverable damages in a statutory cause of action."). Thus, under a plain language reading of the statute, there is no necessary flaw in the jury's award of zero damages in a wrongful death claim. Such a result is permitted.

■ ¶ 12 Our construction of the statute, permitting a zero damages award, is also consistent with other previous holdings. For instance, in *Quinonez v. Andersen,* 144 Ariz. 193, 198, 696 P.2d 1342, 1347 (App.1984), we construed the "fair and just" provision of § 12–613 to permit an award of zero damages. There, we held that a jury could consistently find in favor of the plaintiff on a wrongful death claim but decline to award damages. *Id.* In *Quinonez,* the beneficiary making the damages claim was the decedent's husband. *Id.* Due to the abusive relationship between the husband and the decedent-wife, we determined that "the jury may have concluded that ... a just and fair award for this loss was zero." *Id.* Thus, *Quinonez* illustrates the principle that in a wrongful death case damages is not an essential element of the claim itself and the jury may

return a verdict of zero damages even after a liability verdict.[4]

¶ 13 Related cases dealing with the nature of damages recoverable in a wrongful death action are also helpful in understanding why, unlike a negligence claim, a jury can permissibly return a verdict of zero damages. In *Mullen v. Posada Del Sol Health Care Center,* 169 Ariz. 399, 400, 819 P.2d 985, 986 (App.1991), a mother sought wrongful death damages based on how her son was treated prior to his death in a nursing home. We turned to the language of § 12–613 limiting damages to "the injury resulting from the death." *Id.* We noted that "[w]ithin the meaning of the statute, the death is the source of the injury, not the negligent act." *Id.* (quotations omitted) (emphasis added). Thus, the key distinction between a negligence claim and a wrongful death claim is that damages in a wrongful death claim are not tied to the liability-causing event (the negligent act). Rather, damages are based on the injuries that come from the *result* of the negligent act (the death).

■ ¶ 14 Similarly, *Girouard v. Skyline Steel, Inc.,* 215 Ariz. 126, 127–28, ¶¶ 3–7, 158 P.3d 255, 256–57 (App.2007), espouses this principle. There, the decedent was pinned in a car and burned to death as a result of the defendant's acts. *Id.* We clarified *Mullen* to ensure that the manner of death, which the statutory beneficiaries claimed increased their own injury "resulting from the death," may be considered. *Id.* at 129–33, ¶¶ 10–23, 158 P.3d at 258–62. We made it plain, however, that a statutory beneficiary could not recover for pain and suffering experienced by the decedent:

> While evidence of the manner of death is relevant to mental anguish suffered by the survivor, we reiterate that compensation in a wrongful death action is limited to "injury resulting from *the death.*" Accordingly, ... a survivor may not recover for mental anguish resulting from the negligent acts of the defendant prior to the decedent's

---

4. We do not suggest that there are no differences between our case and *Quinonez.* There are differences. In *Quinonez* there was evidence to rebut the plaintiff's assertion that he was entitled to damages. Here, no contradictory evidence was submitted. We address that issue subsequently. The principle for which we cite *Quinonez* here is that damages is not an essential element of a wrongful death claim.

death, and such evidence is not relevant to the issue of damages. Nor may a survivor recover for mental anguish resulting from actual or perceived pain and suffering experienced by the decedent during the time leading up to death because such period of time precedes the death of the decedent. *Id.* at 131, ¶ 19, 158 P.3d at 261 (internal citations omitted). As both *Mullen* and *Girouard* hold, "the issues of liability and damages in a wrongful death action are generally distinct because recoverable damages are not based on the negligent act but, rather, on the survivors' injuries 'resulting from the [decedent's] death.'" *Englert v. Carondelet Health Network*, 199 Ariz. 21, 27, ¶ 16, 13 P.3d 763, 769 (App.2000) (quoting A.R.S. § 12–613).

¶ 15 Thus, the statutory scheme in a wrongful death action does not preclude a jury from returning a verdict of zero damages. Our case law, with the exception of *White* and *Sedillo*, to which we will now turn, supports this conclusion.

### b. White *and* Sedillo

¶ 16 As noted, the children rely on *White* and *Sedillo* to assert their position that a finding of zero damages requires a new trial.

¶ 17 In *Sedillo*, the plaintiffs brought a wrongful death action against the City of Flagstaff after the decedent died from an auto accident caused by ice on the roadway. 153 Ariz. at 480, 737 P.2d at 1379. At trial, the decedent's wife, daughter, three sons from a prior marriage, and mother, all statutory beneficiaries under the wrongful death statute, testified as to their close family relationship with the decedent. *Id.* at 480, 482, 737 P.2d at 1379, 1381. This testimony was not impeached, contradicted, or refuted by the City. *Id.* at 481, 737 P.2d at 1380. The jury, however, awarded zero damages to three of the beneficiaries: two of the decedent's adult children and the decedent's mother. *Id.* The majority of the *Sedillo* court held that an award of zero damages was insufficient because unrefuted evidence as to damages was presented at trial. *Id.* at 482, 737 P.2d at 1381. The court distinguished *Quinonez* because in that case there was contested evidence such that the jury

could have come to the conclusion that an award of zero damages was appropriate. *Id.* The majority contrasted *Quinonez* with the circumstance in *Sedillo* where "the unimpeached evidence ... demonstrates that the Sedillos all enjoyed close family relationships with decedent, and all suffered substantial emotional, and possibly financial, injuries due to his death." *Id.*

¶ 18 In dissent, Judge Jacobsen focused on the statutory language in A.R.S. § 12–613 which requires the jury to give "such damages *as it deems fair and just* with reference to the injury resulting from the death." *Id.* at 485, 737 P.2d at 1384 (Jacobsen, J., dissenting) (quoting A.R.S. § 12–613). The dissent focused on the lack of pecuniary loss to certain defendants.

> The law, I thought, was clear that the amount of damages which a jury can award for such non-monetary items as loss of affection, love, companionship, consortium, personal anguish and suffering, is entirely within the providence [sic] of the jury.

*Id.* (citing *S. Pac. Transp. Co. v. Lueck*, 111 Ariz. 560, 535 P.2d 599 (1975)). The dissent cited *Begay v. City of Tucson*, 148 Ariz. 505, 508, 715 P.2d 758, 761 (1986), for the proposition that

> the proportion of damages which each statutory beneficiary is entitled to recover is not based on an equal division among the statutory beneficiaries. It is based on their *individual pecuniary loss* suffered by reason of the wrongful death.

*Id.* Judge Jacobsen reasoned, relying on *Quinonez*, "[i]t necessarily follows that if no pecuniary loss is suffered, no recovery is warranted." *Id.*

¶ 19 In *White*, the wife and adult children of the decedent bicyclist brought a wrongful death action against a bicycling event organizer over the organizer's negligence regarding a cattle guard in the bike path. 216 Ariz. at 135, ¶¶ 2–3, 163 P.3d at 1085. The wife and children gave uncontradicted testimony as to their relationship with the decedent, but the jury did not award damages to children. *Id.* at ¶ 5. The majority reversed, affirming the rule presented in *Sedillo* that

360

an award of zero damages was impermissible when nothing in the record contradicted the testimony establishing the beneficiaries' relationships with the decedent. *Id.* at 141–42, ¶¶ 29–30, 163 P.3d at 1091–92.

¶ 20 The majority in *White* agreed that damages were not an element of a wrongful death claim: "[U]nlike in a traditional negligence case, damage to the plaintiff is not an element of liability in a wrongful death action." *Id.* at 138, ¶ 16, 163 P.3d at 1088. As we have set forth above, the *White* majority appropriately differentiated between a negligence claim and a wrongful death claim by stating: "Instead, once a jury determines the defendant is liable for a wrongful death, it then, pursuant to § 12–613, determines 'fair and just' damages 'to the surviving parties' as defined by § 12–612." *Id.* The *White* majority then went on to hold, however, that "there must be support in the record, however slight, for a jury's decision to disregard a witness's testimony." *Id.* at 140, ¶ 22, 163 P.3d at 1090. Like *Sedillo*, the majority distinguished *Quinonez* because there was clearly contradictory evidence in *Quinonez* from which a jury could find that an award of zero damages was appropriate. *Id.* at 141, ¶ 27, 163 P.3d at 1091.

¶ 21 The dissent authored by Judge Espinosa in *White* asserted, accurately from our perspective, that "[t]he majority today fashions a new, unprecedented rule of appellate review that says: 'There must be support in the record, however slight, for a jury's decision to disregard a witness's testimony.'" *Id.* at 144, ¶ 36, 163 P.3d at 1094 (Espinosa, J., dissenting). The dissent pointed out:

That pronouncement, however, ignores the reality that some things may readily evade the record, things like attitude, such as hostility or insincerity; tone of voice and inflection; manner of speaking, such as hesitation or glibness; facial expression, such as excessive blinking or eye rolling; body language, such as shrugging, squirming, or perspiring; and other subtle indicators not expressed in words. This is a bedrock principle underlying appellate deference to the fact-finder, be it jury or judge.

*Id.* (Espinosa, J., dissenting). Judge Espinosa's dissent was premised on the view that the majority in *White* "significantly distort[ed] our standard of review." *Id.* at ¶ 37.

¶ 22 Turning now to our analysis of *White* and *Sedillo*, we emphasize that we do not disrupt existing precedent absent clear error or "cogent reasons" to do so. *Scappaticci v. Sw. Sav. & Loan Ass'n,* 135 Ariz. 456, 461, 662 P.2d 131, 136 (1983) ("[W]e consider decisions of coordinate courts as highly persuasive and binding, unless we are convinced that the prior decisions are based upon clearly erroneous principles, or conditions have changed so as to render these prior decisions inapplicable.") (quoting *Castillo v. Indus. Comm'n,* 21 Ariz.App. 465, 471, 520 P.2d 1142, 1148 (1974)); *see also State v. Patterson,* 222 Ariz. 574, 580, ¶ 19, 218 P.3d 1031, 1037 (App.2009) (collecting citations for the principle that "[w]hen we disagree with a prior decision of our Court ... we should do so only upon the most cogent of reasons being presented"). In this case such cogent reasons exist. Specifically, and as we discuss in more detail below, we conclude the rule announced in *White* and *Sedillo* that "[t]here must be support in the record, however slight, for a jury's decision to disregard a witness's testimony," *White,* 216 Ariz. at 140, ¶ 22, 163 P.3d at 1090, is wrong. This is particularly so in a setting where the plaintiff bears the burden of proof. Stated differently, to require an award of damages to a plaintiff in a wrongful death case absent contradictory evidence is legally flawed because (1) the burden is on a plaintiff to prove damages, (2) that burden does not shift, and (3) a jury is free to disregard the evidence that a plaintiff produces. To adopt the rule that *White* and *Sedillo* promulgate does away with these foundational principles.

¶ 23 Every day in Arizona courtrooms juries are instructed as follows:

In deciding the facts of this case, you should consider what testimony to accept, and what to reject. You may accept everything a witness says, or part of it, *or none of it.*

Rev. Ariz. Jury Instr. ("RAJI") (Civil), at 5 (4th ed. 2005) (emphasis added). We have frequently referred to this as our "standard

instruction regarding the credibility of witnesses." *Smethers v. Campion*, 210 Ariz. 167, 171, ¶ 19, 108 P.3d 946, 950 (App.2005) [5]; *Callender v. Transpacific Hotel Corp.*, 179 Ariz. 557, 562, 880 P.2d 1103, 1108 (App.1983) (A jury "may accept everything a witness says or part of it or none of it."); *see also Am. Family Mut. Ins. Co. v. Grant*, 222 Ariz. 507, 511–12, ¶ 13, 217 P.3d 1212, 1216–17 (App.2009) (indicating that "[t]rial courts regularly instruct juries to assess witnesses' credibility" and then referencing an instruction permitting a jury to "accept everything a witness says, or part of it, or none of it"). Our supreme court has held that the jury is not bound to accept the testimony of a witness, especially that of an interested witness, even if that testimony is uncontradicted. *Estate of Reinen v. N. Ariz. Orthopedics, Ltd.*, 198 Ariz. 283, 287, ¶ 12, 9 P.3d 314, 318 (2000). Consistent with our standard jury instructions, we have held that "a trial court is not bound to accept even the uncontradicted evidence of a *disinterested* party." *Premier Fin. Servs. v. Citibank*, 185 Ariz. 80, 86, 912 P.2d 1309, 1315 (App.1995) (emphasis added). "The rule is that the judge or jury, being the sole judges of the facts and the credibility of the witnesses, may or may not believe an interested party." *City of Tucson v. Apache Motors*, 74 Ariz. 98, 107–08, 245 P.2d 255, 261 (1952). This does not mean that a jury is authorized to return a verdict that has no evidence to support it. *Id.* That, however, is not the circumstance here. The burden of proof was on the children. The jury was free to evaluate their testimony and "accept everything they sa[id], or part of it, or none of it." *Smethers*, 210 Ariz. at 172, ¶ 19, 108 P.3d at 951.

¶ 24 The reason for this rule is the jury has the critical role in evaluating and weighing the testimony of witnesses and the evidence, and we defer to the jury's determination in these areas. The fact finder "sees the witnesses, hears the testimony, and has a special perspective of the relationship between the evidence and the verdict which cannot be recreated by a reviewing court from the printed record." *Hutcherson v. City of Phoenix*, 192 Ariz. 51, 53, ¶ 12, 961 P.2d 449, 451 (1998) (quoting *Reeves v. Markle*, 119 Ariz. 159, 163, 579 P.2d 1382, 1386 (1978)). As an appellate court, "[w]e must not 'take the case away from the jury' by combing the record for evidence supporting a conclusion or inference different from that reached" by the finder of fact. *Id.* at 56, ¶ 27, 961 P.2d at 454 (quoting *Tennant v. Peoria & Pekin Union Ry. Co.*, 321 U.S. 29, 35, 64 S.Ct. 409, 88 L.Ed. 520 (1944)). The jury's role in evaluating testimony is of particular importance in the realm of intangible loss where the court system grants monetary compensation for something typically unquantifiable. *Hernandez v. State*, 128 Ariz. 30, 32, 623 P.2d 819, 821 (App.1980). As we have said, "[t]ranslation into dollars of the loss of companionship, affection, and society, and the anguish ... experienced as a result of ... death is peculiarly the jury's function." *Id.*

¶ 25 The practical effects of forbidding an award of zero damages are also anomalous. The *White* majority noted that, although an award of zero damages would be impermissible, "nothing ... prohibits a jury from awarding nominal damages." *White*, 216 Ariz. at 142 n. 7, ¶ 29, 163 P.3d at 1092 n. 7. We repeat, damages are not an essential element of a statutory wrongful death claim. Thus, we fail to see how an award of $1 would be "sufficient" as a matter of law, but an award of zero damages would not. *See id.*

**5.** As stated in *Smethers*, the standard instruction regarding the credibility of witnesses is as follows:

In deciding the facts of this case, you should consider what testimony to accept, and what to reject. You may accept everything a witness says, or part of it, or none of it.

In evaluating testimony, you should use the tests for truthfulness that people use in determining matters of importance in everyday life, including such factors as: the witness's ability to see or hear or know the things the witness testified to; the quality of the witness's memory; the witness's manner while testifying; whether the witness had any motive, bias, or prejudice; whether the witness was contradicted by anything the witness said or wrote before trial, or by other evidence; and the reasonableness of the witness's testimony when considered in the light of the other evidence.

Consider all of the evidence in the light of reason, common sense, and experience.

*Smethers*, 210 Ariz. at 172, ¶ 19, 108 P.3d at 951 (quoting RAJI (Civil), at 21 (3d ed. 1997)).

at 143, ¶ 34, 163 P.3d at 1093 (Espinosa, J., dissenting) ("[T]he majority's nominal damages position merely begs the question why, absent some statutory guidance, an award of $1 would be an adequate, if demeaning, award but not zero."); *Roberts v. City of Phoenix*, 225 Ariz. 112, 122 n. 5, ¶ 38, 235 P.3d 265, 275 n. 5 (App.2010) (stating that nominal damages are awarded to vindicate rights).

■■■ ¶ 26 Critically, to require an award of some damages based simply on the absence of any affirmative evidence in the record that the statutory beneficiaries should not recover fundamentally alters the burden of proof. Each plaintiff in a wrongful death case bears the burden of proof to show a compensable loss. *See Patania v. Silverstone*, 3 Ariz.App. 424, 429, 415 P.2d 139, 144 (1966) ("[P]laintiff has the burden of proof in establishing damages ...."); *see also Wilmot v. Wilmot*, 203 Ariz. 565, 571, ¶ 22, 58 P.3d 507, 513 (2002) ("The judge should instruct the jury to 'find the amount of damages sustained by each beneficiary.'" (quoting *Nunez v. Nunez*, 25 Ariz.App. 558, 562, 545 P.2d 69, 73 (1976))). Requiring the defendant to come forth with evidence that the plaintiff did not sustain the damages asserted shifts this burden of proof. While such a burden-shifting scheme may be present in other areas of law, *see, e.g., McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973) (holding that in Title VII employment discrimination cases, the burden of proof shifts to defendant after the plaintiff shows a prima facie case of racial discrimination), this structure is not supported by the language of our wrongful death statutes. Plaintiffs in wrongful death cases begin and end with the burden of proving their damages.

¶ 27 To the extent that the children rely upon, and the *White* majority cites, authority

supporting the proposition that the jury may not "arbitrarily disregard" the uncontradicted testimony of a fact witness, the cases are nearly all Industrial Commission cases.[6] 216 Ariz. at 138–39, ¶ 17, 163 P.3d at 1088–89 (citing *Ratley v. Indus. Comm'n*, 74 Ariz. 347, 349–50, 248 P.2d 997, 998 (1952); *Hunter v. Indus. Comm'n*, 130 Ariz. 59, 61, 633 P.2d 1052, 1054 (App.1981); *Carabetta v. Indus. Comm'n*, 12 Ariz.App. 239, 242, 469 P.2d 473, 476 (1970)). As the *White* dissent also noted, workers' compensation law "is designed to be interpreted liberally to protect injured claimants." 216 Ariz. at 144 n. 13, ¶ 36, 163 P.3d at 1094 n. 13 (Espinosa, J., dissenting) (citing *Hypl v. Indus. Comm'n*, 210 Ariz. 381, 387, ¶ 18, 111 P.3d 423, 429 (App.2005); *Self v. Indus. Comm'n*, 192 Ariz. 399, 401, ¶ 6, 966 P.2d 1003, 1005 (App.1998)). We can think of no reason why the wrongful death statutory scheme should be similarly interpreted, *see White*, 216 Ariz. at 144 n. 13, ¶ 36, 163 P.3d at 1094 n. 13 (Espinosa, J., dissenting), particularly in light of our well-established principle that juries are entitled to not accept the testimony of witnesses, especially when offered to establish a party's burden of proof.

¶ 28 As we set forth earlier, nothing in the statutory scheme mandates an award of damages, even when liability is found. The majorities in *White* and *Sedillo* interpreted A.R.S. § 12–613 to place the jury under obligation to affirmatively award damages to the statutory beneficiaries. This was based on the portion of the statute that states the "jury *shall* give such damages as it deems fair and just." *White*, 216 Ariz. at 141, ¶ 28, 163 P.3d at 1091 (emphasis added) (quoting A.R.S. § 12–613); *see also Sedillo*, 153 Ariz. at 481, 737 P.2d at 1380. "Shall," however, is not an imperative requiring the jury to award damages in a particular amount. Rather it is an imperative to do what is "fair and just." As Judge Espinosa phrased it,

**6.** The single non-Industrial Commission case, *Boswell v. Phoenix Newspapers, Inc.*, cited only a single Industrial Commission case in support of the proposition that a reasonable jury cannot reject unimpeached testimony. 152 Ariz. 1, 3, 730 P.2d 178, 180 (App.1985). Additionally, the uncontradicted testimony in that case was from a disinterested individual who was not a party to the lawsuit. *Id.* at 2–3, 730 P.2d at 179–80.

That is not the situation presented here because the children's testimony is from interested parties to the lawsuit. Moreover, ten years later we stated that "a trial court is not bound to accept even the uncontradicted evidence of a disinterested party," thus correcting the proposition stated in *Boswell*. *Premier Fin.*, 185 Ariz. at 86, 912 P.2d at 1315.

"[T]he word 'shall' ... authorized but did not mandate ... a jury to award such damages." *White,* 216 Ariz. at 143, ¶ 33, 163 P.3d at 1093 (Espinosa, J., dissenting) (quoting *State v. Sanchez,* 119 Ariz. 64, 68, 579 P.2d 568, 572 (App.1978)).

¶ 29 Finally, we note that "[i]n reviewing a jury verdict, we view the evidence in a light most favorable to sustaining the verdict." *Styles v. Ceranski,* 185 Ariz. 448, 450, 916 P.2d 1164, 1166 (App.1996). Viewed in a light most favorable to sustaining the verdict, the evidence (or lack of evidence) supporting the jury's award of zero damages is two-fold: (1) the burden is on the children to prove damages, and (2) the jury is free to disregard the evidence that the children produced, and the jury apparently did so here.

¶ 30 For these reasons, we hold that a jury finding of zero damages in a wrongful death case—even without contradictory evidence on damages—may be upheld.

## 2. *Retroactivity*

¶ 31 The children argue that any overruling of *White* and *Sedillo* should apply only prospectively. Arizona appellate opinions in civil cases generally operate both retroactively and prospectively. *Law v. Superior Court,* 157 Ariz. 147, 160, 755 P.2d 1135, 1148 (1988) (supplemental opinion). This rule favoring retroactivity may be overcome if three conditions are satisfied:

1. The opinion establishes a new legal principle by overruling clear and reliable precedent or by deciding an issue whose resolution was not foreshadowed;

2. Retroactive application would adversely affect the purpose behind the new rule; and

3. Retroactive application would produce substantially inequitable results.

*Id.* To decide whether to apply a rule prospectively, we must balance these three factors. *Id.* at 161, 755 P.2d at 1149.

¶ 32 As to the first factor, our opinion establishes a contrary precedent to the prior holdings in *White* and *Sedillo.* Each of those cases, however, had strong dissents. Under *Law* we are to consider whether the earlier precedent is "clear and reliable." *Id.* While *White* and *Sedillo* are "clear," the force of logic embodied in the dissents, and our own reasoning above, weigh in the balance as to the reliability factor. Additionally, deference to the fact finder has been a time-honored and well-established principle, and this underlying law drives our decision today.

¶ 33 As to the second factor, retroactive application does not adversely affect the purpose behind the new rule. The purpose behind the "new rule" is simply to re-enthrone the language in A.R.S. § 12–613. That statute permits the jury to return an award that is "fair and just," which can include an award of zero. The statute emphasizes the role of the fact finder when awarding damages in an intangible-loss case. This purpose is better served through retroactive application.

¶ 34 As to the third factor, retroactive application would not produce substantially inequitable results. Had we followed *White* and *Sedillo,* the children would have automatically been granted a new trial on their award of zero damages, but the grant would not have been automatic had they been awarded $1 in damages. Declining to automatically grant a new trial based on an award of zero damages, when a new trial would not be automatic for damages of $1, is not "substantially inequitable." Further, and importantly, by remanding this matter to the trial court to consider the Rule 59(a)(5) motion, the children have the same rights any party in the future would have: the trial judge may consider, but is not required to grant, a motion for new trial. Weighing these three factors, we determine that retroactive application under *Law* is appropriate.

### *Conclusion*

¶ 35 For the reasons stated above, we remand this matter to the trial court for proceedings in accordance with this opinion.

CONCURRING: DONN KESSLER, Presiding Judge, and JON W. THOMPSON, Judge.